DAVID P. NOYES *v.* JOSIAH BROWN, AND TRUSTEE VERNON P. NOYES, AND CLAIMANT THOMAS GLEED.

*Chose in action.   Assignment.   Attorney.*

An *oral* assignment of a *chose in action* operates as an equitable transfer, and when followed by notice thereof from the assignee to the debtor, will be protected and enforced by courts of law against a subsequent attachment by trustee process.

Noyes *v.* Brown et al.

The trustee had lawfully in his hands money belonging to the defendant, to which the latter had a present right. The defendant was indebted to the claimant, an attorney, who also had in his hands for collection demands in favor of various clients against the defendant. For the purpose of securing the payment of the claimant's own demand, and also those of his clients, the defendant verbally assigned to the claimant his claim against the trustee, and the claimant gave the trustee notice of such assignment previous to the commencement of this suit; *Held,* that the assignment to the claimant was valid, though not in writing, and that it was not an assignment for the benefit of creditors within the statute of 1852 on that subject.

TRUSTEE PROCESS. It appeared that previous to January, 1857, the defendant Brown was indebted to Somerby & Terrell, Somerby, Camp & Co., and to J. C. Burrett & Co., and that these claims had all been placed in the hands of the claimant, Gleed, who was an attorney, for collection. At the same time Brown was also indebted to the claimant. On the 5th of January, 1857 Brown made a verbal assignment to the claimant of all monies belonging to him in the trustee's hands and of all claims and demands in his favor against the trustee, to secure the payment of his liabilities in the claimant's hands for collection, as above mentioned, and also of his debt to the claimant. Prior to the service of the writ in this case upon the trustee, the claimant gave him written notice of the assignment to him by the defendant, of the latter's claim against the trustee. No writing passed between the defendant and the trustee relating to the assignment of this claim, but the whole transaction was entirely verbal.

No question was made but that the trustee was indebted to the defendant at the time he received notice from the claimant of the assignment of such indebtedness to him, and that he had never paid the same.

The cause was tried by the court in Chittenden county, at the September Term, 1859,—BENNETT, J., presiding.

The county court did not find that the assignment was made in bad faith by the defendant to the claimant.

The county court decided that the claimant was not entitled to funds in the hands of the trustee, and rendered judgment that the trustee was chargeable, to which the claimant excepted.

The claimant *pro se.*

*Roberts & Chittenden,* for the plaintiff.

BARRETT, J.   It appears that " on the 5th day of January, 1857, Brown assigned, made over and conveyed to Gleed, verbally and not in writing, the said monies so in the hands of said V. P. Noyes as aforesaid, and all claims and demands and rights of action in his favor against said V. P. Noyes, to secure the payment," etc. ; that a written notice of said assignment, dated said 5th day of January, 1857, was served on said V. P. Noyes on the 10th day of said January, and that the subject matter of said assignment was the property of said Gleed, which notice closed by saying " you will, therefore, make all payments or securities of the same to me."   (Signed,) " Thomas Gleed."

Brown was at that time owing Gleed about two hundred dollars, and Gleed was at the same time holding, as attorney for collection, a claim against him for about two hundred dollars more.   In reporting the case the county court state that they " did not find that the assignment was made in bad faith by said Brown to said Gleed."   These are all the facts that bear on the question to be decided.

In disposing of the case, it seems proper in the first place to enquire whether the assignment made as above found by the county court, would be valid, if unaffected by the statute of 1852.

The case as stated excludes the idea that the transaction rested in a mere *executory agreement* to assign, and thereafter to be executed by something more to be done by the assignor.   The transaction, when turned into words, was in substance the saying by Brown to Gleed, " I assign, make over and convey to you the said monies in the hands of V. P. Noyes, and all claims and demands and rights of actions in my favor against said Noyes, to secure the payment," etc.   If the same language had been written down and signed by Brown, and the instrument delivered to Gleed, it would, beyond question, have constituted a valid transfer, in the character of an equitable assignment, which courts of law would recognize and protect.   Was it such a transfer without being in writing ?

On this point this case is very different from *Whittle* v. *Skinner*, 23 Vt. 531, it being an executed verbal assignment of a specific fund in the hands of V. P. Noyes, with nothing further

to be done by the assignor, while that was a mere *executory agreement* to assign an uncertain balance, thereafter to be ascertained by the assignor as the result of a future settlement of a partnership of which he was a member.

This character of that transaction required the decision that was made in that case upon clear principle and numerous authorities. As to the remarks upon the general subject by the learned judge who drew up and delivered the opinion, we may have occasion to make a suggestion hereafter.

No statute of frauds or other statute requires a writing in order to a valid transfer that shall amount to an equitable assignment. If Brown had drawn his written order on Noyes directing him to pay the money to Gleed, that would have answered the requirement of the law, as has been expressly and well decided ; or if he had held Noyes' receipt for the money, passing that over to Gleed would have put the matter beyond question. See numerous cases cited in note to *Foster et al.* v. *Lowell*, 4 Mass. 308, which cases are cited to show, and do show conclusively, that the court in that case were in error in the intimation that a memorandum in writing of the agreement was needful.

In 2 Story's Eq., Juris., p. 310, sec. 1047, it is said, " In order to constitute an assignment of a debt, or other *chose in action* in equity, no particular form is necessary. &ast; &ast; &ast; Indeed any order, writing or act which makes an appropriation of a fund, amounts to an equitable assignment of that fund. The reason is that the fund being matter not assignable at *law*, nor capable of manual possession, an appropriation of it is all that the nature of the case admits of, and therefore is held good in equity. An assignment of a debt may be by parol, as well as by deed. &ast; &ast; &ast; But in order to perfect the title against the debtor, it is indispensable that the assignee should immediately give notice of the assignment to the debtor, for otherwise a priority of right may be obtained by a subsequent assignee, or the debt be discharged by a payment to the assignor before such notice."

To the point that " an assignment of a debt may be by parol as well as by deed," the learned author cites only two cases, viz : *Heath* v. *Hall*, 4 Taunt. 326, and *Tibbetts* v. *George*, 5 Ad. and

El. 107. In the former of said cases the transaction was wholly verbal, the sale of a claim upon an agreement to pay ten shillings in the pound of its amount, and passing the amount to be paid to the credit of the assignor in the banking account which the assignee had with the assignor. No papers whatever passed between the parties. MANSFIELD, Ch. J., remarked " that to say that the agreement for the purchase of the debt was not binding, was begging the question. If two men agree for the sale of a debt, and one of them gives the other credit in his books for the price, that may be a very good assignment in equity ; its resting in parol is no objection ; even a deed could not assign it at law."

On this point the court granted a rule *nisi*, but desired it might not be argued unless the defendant's counsel could produce some authority to shake the present opinion of the court. Sergeants Vaughan and Rough for the defendant, not having found any authority to serve their purpose, on a subsequent day the court relieved Shepard, Sergeant, from arguing for the plaintiffs, and discharged the rule.

In the latter of said cases the plaintiff as assignee of an insolvent, under proceedings in the *insolvent court*, brought his suit to recover money received by the defendant by virtue of a verbal assignment made by the insolvent to the defendant, of a portion of a certain debt owing to the insolvent. The question was between the two assignees, which was entitled to the fund ? And this depended solely upon the validity of the parol assignment, unaffected by any writing that passed in respect to the matter. It was held that the *bona fide* verbal agreement was sufficient to entitle the defendant to hold the money. *Briggs* v. *Dorr*, 19 Johns. 95, was an action of debt on a judgment. Upon the pleadings the sole issue of fact was whether the demand on which the judgment was predicated had, before judgment, been assigned by the plaintiff to one Gleason. On this issue the witness testified that Gleason and the plaintiff were at his store when the plaintiff told the witness that he had sold his demand against the defendant to Gleason, who then paid the plaintiff the balance in goods ; that a few days after the defendant told the witness that the plaintiff had assigned the demand against him to Gleason. * * * * The witness, on his cross

examination said that he did not know whether there was a written assignment or not. The plaintiff, pursuant to a notice for that purpose, was called on to produce the assignment, but did not.

On this evidence a verdict was found for the plaintiff.

WOODWORTH, J., in delivering the opinion of the court said, "the single point in issue then, is whether Gleason had the beneficial interest in the demands on which the judgment was recovered. On this issue the plaintiff held the affirmative; whether there was a written assignment does not appear. It is to be inferred from the evidence that the transfer was by parol, which is valid without writing; a delivery of a chose in action for good and valuable consideration is sufficient;" and cases are cited upon the general subject. It does not appear in the case that any execution was taken on the judgment or delivered to the assignee. The two cases cited by Judge STORY, which we have above set forth, show what the language of the learned commentator signified to his apprehension, when he said "any order, writing or act, which makes an appropriation of a fund amounts to an equitable assignment of that fund." "An assignment of a debt may be by parol as well as by deed." The case cited from 19th Johns. shows that the court of New York entertained the same idea as the English courts and Judge Story.

In *Spafford* v. *Page*, 15 Vt. 490, it was reported by the auditor that the plaintiff had sold the account against the defendant to H. H. Spafford, to whom he was indebted to an amount exceeding the amount of said account; that within three days after said sale the plaintiff delivered a transcript of said account to H. H. Spafford; that the plaintiff did not at the time nor subsequently give any written order on the defendant to pay said account to H. H. Spafford; that H. H. Spafford was to credit the plaintiff the amount of said account, but it did not appear whether it had been credited; that H. H. Spafford gave notice to the defendant of the purchase of said account, etc.

The question whether this constituted a valid equitable assignment was a distinct point and thoroughly discussed by counsel, but with no allusion to the fact of the transcript having been delivered within three days after the sale; nor is it alluded to by the learned judge, who holds the following language: "The

question made in this case in regard to the validity of an oral assignment of a book debt, to vest in the assignee the equitable interest, cannot, I apprehend, admit of doubt. Mr. Justice STORY states the general doctrine thus, (and he is sustained by all other writers upon the subject, and by the adjudged cases,) ' Any order, writing or act which makes an appropriation of a fund, amounts to an equitable assignment of the fund. An assignment of a debt may be by parol as well as by deed.' And if an assignment may be by parol, it is surely not important whether it be by writing or mere words."

In this connection it is proper to allude again to the case of *Whittle* v. *Skinner,* 23 Vt. 531, which is cited in the argument by the plaintiff's counsel, as authority against the transaction in the present case being a transfer by way of equitable assignment.

As before remarked, the fact that in that case the whole thing was made and left *executory,* resting in mere *agreement,* to the performance of which much was thereafter to be done by the assignee, constitutes a very distinguishing difference between that case and the present, and was of itself conclusive against that being regarded as an equitable assignment, or any transfer at all. After having presented this view as decisive, it is true the learned judge proceeds to view the subject in the light of the general rule, requiring, in an assignment of a thing by way of pledge, that there should be a delivery in order to render it operative, and says, " we do not see why this will not apply to *choses in action,* as well as to things in possession. We know of no case, where a mere agreement to assign a chose in action, without even a symbolical delivery, has been held valid between the parties even. In the case of a note or bond, the delivery of the contract is sufficient. So too when the assignment of an account is made, it has been held sufficient to deliver the bill. And when the assignment is in writing the delivery of the writing would very likely be sufficient. But we recollect no case where the mere agreement to assign has been held an assignment in the present tense. It is evident from what subsequently passed between the parties, that they regarded the first agreement as *merely inchoate* and not as vesting any present interest in the unliquidated balance of the partnership dealings."

It may be sufficient to remark that, construing this language in reference to the case then under consideration, and particularly to the feature of it set forth in the last clause of the foregoing quotation, it is proper and just, and subject to no misapprehension; and, upon familiar principles and daily usage, its force as authority is only to be determined by thus construing it.

As applicable to the present case, it is to be strongly remarked, that in this case it was not a mere agreement to assign, not *merely inchoate,* but it was a perfected transaction between the parties, intended to vest a present interest in a specific fund.

The subject matter of the assignment was not capable of delivery, certainly not *actual;* and it is difficult to conceive how a symbolical delivery could have been made, unless the effect of the notice given to the holder of the fund be regarded as tantamount to such delivery. A note or bond or other written obligation or evidence of debt may easily be delivered, and such delivery would of itself constitute an assignment, if such was the intent. So a transcript or copy of an account may be passed over to the assignee; but such passing over of a copy, it is conceived, would be only an incident to be used as evidence of an assignment, the fact of an assignment being all the while dependent upon the transaction between the parties prior to, and independent of such passing of the copy.

But in this case there was no written obligation or security or evidence of claim, nor any account or proper subject of an account. It was merely a claim arising upon the fact that Noyes held Brown's money, to be enforced by an action upon an implied assumpsit to pay it over to Brown.

This was clearly assignable. A written assignment executed and delivered would not be a symbolical delivery of the subject matter of such assignment. It would be only evidence of the fact of the assignment. And moreover, it is clear law that the assignment of such a matter may be by parol, and equally without as with a written instrument. Indeed the mode or instrumentality by which the assignment is made only affects the subject of the means by which the assignment is to be proved, and not the ultimate validity of the assignment itself. Such is the necessary view resulting from the authorities cited.

If an assignment has been made, it is of no moment to the third party in what way it has been done. Upon notice of the fact he becomes bound to pay or deliver to the assignee. That the mode adopted renders it less easy to prove the assignment, or gives the party holding the property less assurance and certainty of the fact, than some other mode, does not affect the validity of the assignment itself. If controversy should arise in respect to it, all that can be said is, that he holds his position subject to its incidents and hazards, and must respond his legal liabilities as they shall be ultimately determined. A recent case in the English court of chancery has fallen under the notice of Ch. J. REDFIELD, holding that notice to the fund holder perfects a verbal assignment making it effectual to vest the equitable interest in the assignee. This upon principle, and in analogy to the transfer by sale, or assignment, or pledge, or personal chattels in the hands of a third person as bailee of the owner, is clearly applicable to the present case and fully answers to the view of the subject presented by Judge REDFIELD in *Whittle* v. *Skinner*. The money, as a fund belonging to Brown, was in the hands of Noyes. When he received notice of the assignment to Gleed, and made no dissent to holding for his benefit he thenceforward became the holder for Gleed to respond any interest that Gleed might have. In the case of a personal chattel, such notice received without dissent, would have operated as a change of possession, and be held tantamount to a delivery to the vendee or assignee. Upon this view authorities are so familiar as to render needless any specific citation.

Assuming, what is clearly well stated, that a *chose in action* or a fund situated as that in this case was, is the subject of a parol assignment, no sound reason can be assigned, as we think, why it should not be effectually done upon the same principles and by the same modes as are every where recognized as effectual to pass the legal or equitable title and interest in personal property.

We understand the case of *Dickinson* v. *Phillips*, 1 Barb. Sup. Ct. 454, cited by the plaintiff's counsel on this point, to be consonant with, and the reasoning of the learned judge to sustain these views. In that case the transaction did not in any view

constitute an assignment, hardly so much so as in the case of *Whittle* v. *Skinner*, cited *supra*.

Near the close of the opinion in which the cases are ably reviewed, it is said : "The distinction between those cases in which the transaction has been held to constitute an equitable assignment, and those in which it has been held not to constitute such an assignment, seems to depend upon the question whether the party having the control of the fund intended in fact to make an absolute appropriation of it, or whether he intended himself to retain the control of it." * * * " In every case I have been able to find," (says the same judge) " where a debtor has been held to have made a specific appropriation of a particular fund to the payment of a specific debt, an intention to surrender to the creditor all control over the fund has been shown."

*Hoyt* v. *Story* 3 Barb. Sup. Ct. 262 is also cited upon this subject by the plaintiff's counsel. A single passage from the opinion of the court shows the character of the case. "Here is no *order* upon the fund ; there is no assignment, transfer or appropriation, the plaintiff has no authority by which he could demand payment of the company, nor which would protect and justify the company paying him." An examination of the case itself will impressively show how entirely destitute it is of anything in the nature of an assignment, or of anything indicating any such intention. To the reverse of which the case before us assumes that an assignment was in fact intended and made so far as it could be by spoken words, thus leaving to be decided only the question whether it could be done in that manner, without any further act on the part of the assignor.

Upon the authorities and reasons thus presented, we think it could be, and therefore in this particular we regard the assignment well enough. We have devoted thus much of time and space to this subject, for the reason that it is rare for the naked question here presented to arise, and also on account of the urgency with which the argument of the learned counsel pressed it upon the court.

So far as the validity of the assignment depended on a sufficient consideration, the existing indebtedness against Brown was ample to that intent. And it is proper to repeat, the trans-

action as shown by the case, does not appear to be tainted with any fraud in fact.

This brings us to the consideration of another point, which has been elaborately argued on both sides, viz: that such an assignment could only be legally made by pursuing the provisions of the act of 1852. For present purposes it is best first to determine the true character of the transaction. Gleed was the creditor of Brown in his own right, and, as attorney, held other demands against him for collection. Being thus situated he took the assignment in question to secure the payment of all these debts, his own as well as his clients. As to his clients' debts, he stood in a position that imposed a duty which could be discharged only by collecting them, if he knew of the means of so doing, or responding for his neglect by paying them out of his own pocket.

It is clear that on the 5th of January, 1857, he knew of ample means of securing their payment by bringing a trustee process and summoning said V. P. Noyes; for on that day the fund in question was assigned to him. Thus knowing of these means, by taking a different course, and relying upon an assignment of the fund instead of process and suit at law, he took upon himself the hazard of responding to his clients for their debts, to the extent of the means which might have been available, if process had been duly resorted to. This posture of Gleed in its legal relations must have been in the mind of both parties at the time the assignment was made, and it must have been made in reference thereto. Hence it is quite obvious that it was designed to be available to him for all the legitimate purposes of the position which he thus held; namely, to secure to him the payment of his own claim, and enable him to meet his duties and liabilities to his clients in reference to their demands in his hands.

Upon the very statement it is obvious how different was his character and position under that assignment from that of a mere trustee, to administer the fund for the benefit of creditors. He had an interest in the fund assigned to the full extent of his own debt, and that of his clients, in order to answer his own personal rights as creditor of Brown, and to meet his own liabilities to Brown's creditors on account of the demands that he held for collection; while, on the other hand, *a trustee* for the benefit of

creditors, in that specific character, as to such creditors, has no relation of interest to their debts, or to the property of the assignor, and of course no duty or responsibility in respect thereto, prior to or at the time of the assignment, nor until he has accepted the trust thereby created ; and then he has no interest, duty or responsibility, only for the faithful administration in the manner and for the purposes designated in the assignment itself.

In view of this position of Gleed relatively to the demands against Brown which he held for collection, it seems to us that it would be doing violence to language, and to all just ideas of the law of the subject, to hold that he is to be regarded under this assignment as an assignee or trustee for the benefit of creditors.

We think he did not take or hold under the assignment in the relation of trustee towards his clients, but on his own personal account, as matter of security and indemnity to himself, for duties and responsibilities which he owed to his clients, on the score of Brown's indebtedness to them in his hands.

We should regard it a very unfortunate conjuncture, if the statute of 1852 must operate to prevent an attorney from taking specific security for a demand in his hands for collection, when he sees fit to do so on his own personal responsibility, and compel him, in order to acquit himself towards his employers, to force a debtor, as well as his employers to the expense, and delay and vexations of a suit.

If Gleed had brought trustee suits on the 5th of January, 1857, instead of taking the assignment, he would have fastened upon the fund in V. P. Noyes' hands, as against the world. Assuming as to his own debt, as well as to those of his client, the risks, responsibilities and liabilities resulting from pursuing the course he did, instead of resorting to suits, we think it would hardly be warrantable to stick in the bark by hypercriticism, and give to the transaction, in itself commendable, a forced technical character entirely different from what its substance merits or justifies, merely for the sake of upsetting it, thus operating with certainly great injustice towards Mr. Gleed, and answering to no superior equity existing in the plaintiff.

As the counsel for the plaintiff concede, it is quite palpable, that the act of 1852 does not embrace specific assignments to credit-

ors directly, and as it is obvious that persons entitled to indemnity against liabilities incurred on account of others, stand in the same right in respect to security, as creditors, the result of the views above expressed is that the assignment in this case is not affected by the law of 1852.

This result thus attained renders it needless to discuss that law under a wider range, and we regard it best to leave its construction and application to other and different cases till such cases arise.

The judgment below is reversed, with costs to the claimant, and judgment that V. P. Noyes is not trustee.