WILLIAM McGREGOR *v.* J. D. CHASE & SONS, AND WARREN C. LEWIS, WILLIAM B. MAY, SOLON S. GOULD, SAMUEL L. ADAMS AND HARRY GREGORY, *Trustees.*

### *Trustee Process. Assignment. Mortgage. Fraud.*

The alleged trustees had taken bills of sale of certain property from the principal debtors, to secure them for debts which the principal debtors owed the trustees, and for liabilities the trustees had incurred in their behalf; but in lieu of these bills of sale, and for better security, the trustees took a deed of the principal debtors' real and personal property, conditioned to be void if the said indebtedness should be paid and the trustees indemnified for their liabitities. The trustees were to take full possession and control of the property, collect back accounts and demands, all of which were sold to the trustees and included in the conveyance, convert the personal property into money and pay off said indebtedness and liquidate said liabilities, and were to have the use and occupancy of all the real estate and fixtures for the purpose of completing jobs on hand, &c. *Held,* that this was not an assignment within the meaning of the statute, and therefore not rendered void by reason of non-compliance with its requirements.

There may be a transfer to a party to secure a liability incurred by him for the assignor or grantor, as well as to secure a debt due from the latter to the former.

The instrument in this case is a mortgage, and the power of sale contained therein does not essentially change its character.

Nor does the provision that the mortgagees are to have possession have that effect.

Nor would a subsequent change in the management of the property from what was designed, for the purpose of realizing more from it, render the deed void under the statute relating to assignments.

The deed was valid as to the creditors of the principal debtors, and the mortgagees could not be held as trustees either for moneys in their hands or that came to them, or for the property in their hands under the assignment, until their debts against the principal debtors were paid.

In order for the creditors to get the surplus, if any, in the hands of the trustees, they must redeem the property by paying the lien of the trustees.

If one of the trustees owed the principal debtors on book account at the time the deed was made, the same having been transferred to the trustees in the deed, they will hold it like other accounts until their lien is discharged.

TRUSTEE PROCESS. The commissioner found and reported that prior to August 5th, 1861, the principal debtors had given to the alleged trustees bills of sale of certain personal property as security for debts which they owed the trustees, and for liabilities that the trustees had incurred in their behalf; but the trustees being fearful that they had not taken sufficient possession of the property conveyed by those bills of sale, to enable them to hold it against subsequent attaching creditors, and the principal debtors being actuated by the same fears, and knowing that they were deeply embarrassed, on the said 5th of August conveyed to the trustees all their known, visible, attachable property, both real and personal, in lieu of said bills of sale.

This deed set forth the indebtedness of the principal debtors to the several trustees individually, and the liabilities incurred by them, and recited these several and individual debts and liabilities as the consideration of the conveyance, and described the property conveyed, consisting mainly of a machine shop, foundry, blacksmith's shop, dwelling houses, lumber, machinery, &c., together with demands, notes and unsettled accounts against persons named in said deed, and also all back accounts against any and all individuals. And authority was contained therein to the said trustees to collect said demands and accounts and give discharges for the same; said conveyance also included a certain contract for the delivery of a quantity of lumber; "to have and to hold the same property to the said Lewis, May, Gould, Adams and Gregory, to their use forever, conditioned, that if we well and truly pay said indebtedness to them,

and indemnify and save them harmless from all liabilities they are under and have incurred for us, then this conveyance to be void. And the said Lewis, May, Gould, Adams and Gregory are hereby authorized to take the full posession and control of the said demands, machinery and personal property, before described, and to collect said demands, and convert said personal property into money as soon as may be consistently, for the payment of our said indebtedness *to* them, and to pay off and liquidate the said liabilities they are under for us, before stated; and they are to have the use and occupancy of all said real estate and fixtures, for the purpose of completing any jobs on hand, and manufacturing any unmanufactured lumber and other stock on hand."

It appeared that this suit was commenced August 6th, the day after the execution of said deed.

The trustees took the property conveyed by this deed for the purpose of collecting the demands so conveyed, and of converting the personal property into money as soon as it could be consistently done, in order to pay the principal defendants' indebtedness to the trustees, and the debts of the principal defendants on which the trustees were liable, and for the purpose of preventing the creditors of the principal defendants from commencing suits and making costs and embarrassing the latter in their business by securing their claims.

The trustees were to complete the jobs, and manufacture the lumber and stock then on hand, and the trustees were to have the privilege of purchasing what stock was required for that purpose.

The management of the property as it had been previous to and at the time of the hearing did not accord with the understanding of the grantors and the grantees named in the deed, at the time the deed was made, but the grantors have ever acquiesced in the way in which it has been managed, giving as a reason, that, owing to the depression in business, the property could be better disposed of by continuing the business along as it has been done,—to which manner of managing the property neither the plaintiff in this case nor the other creditors ever assented.

The other material facts are stated in the course of the opinion.

At the March Term, 1864, POLAND, Ch. J., presiding, the plaintiff consented that a judgment be entered that the trustees be discharged

with costs, with leave to except thereto. A *pro forma* judgment was therefore accordingly entered,—to which the plaintiff excepted.

*O. F. Harvey* and *Ossian Ray* for the plaintiff.

The conveyance of all the defendants' property to the trustees in this suit by the deed of August 5th, 1861, is in form and substance an assignment for the benefit of creditors. Not being made for the benefit of all the creditors in proportion to their demands, and not being executed in the manner prescribed by the statute, the instrument is null as an assignment. This conveyance is to the trustees jointly—they cannot now retain the property on account of individual debts which some of the trustees may have against the defendants, or on account of individual liabilities which some of the trustees may be under for them. This case does not fall within the rule laid down in *Noyes* v. *Brown,* 33 Vt. 442.

The transfer of the defendants to the trustees, August 5th, 1861, was made expressly to hinder, delay and defraud creditors, among other purposes, and this with full *knowledge* and *participation* therein on the part of the trustees.

A sale of personal property or conveyance of land to defeat a creditor's execution is void, even though the purchaser or grantee may have paid a full consideration. 2 Kent's Com. 513 ; 4 do. 464 ; *Edgell* v. *Lowell,* 4 Vt. 412 ; *Worsely* v. *DeMattos,* 1 Burr, 474–5 ; *Kimball* v. *Thompson,* 4 Cush. 441.

*J. Ross,* for the trustees.

I. The conveyance by John D. Chase & Sons to the trustees, of August 5th, 1861, is not an assignment " for the benefit of creditors," within the scope and meaning of the acts of 1852 and 1855, relating to assignments, but is only a mortgage or pledge of the property directly to the trustees, as creditors, and is not void. *Peck & Co.* v. *Merrill and Trustees,* 26 Vt. 686 ; *Leitch* v. *Hollister et al.,* 4 Comstock, 211 ; *Dunham & Dimond* v. *Whitehall et al.,* 21 N. Y., 131.

II. The conveyance to the trustees is not void or voidable by reason of being intended or operating to hinder and delay creditors in the collection of their debts. *Edson* v. *Sprout and Trustee,* 33 Vt. 77 ; *Gregory et al.* v. *Harrington et al.,* 33 Vt. 241.

III. It was lawful for the trustees to take a conveyance of the defendants' property to secure the payment of their debts and liabil-

ities, and for the defendants to give such securities. The act performed being lawful and right, it matters not from what motives it was performed. *South Royalton Bank* v. *The Suffolk Bank*, 27 Vt. 505; *Chatfield* v. *Wilson*, 28 Vt. 49.

IV. The trustees in any event cannot be holden for the real estate, as that can only be reached by attachment and levy of execution, and was only conveyed to them in mortgage, nor for the notes and book accounts or other choses in action conveyed to them. Drake on Attachment, ch. 20, §§ 479 to 481; *Hitchcock* v. *Egerton*, 8 Vt. 202; *Bishop, Smith & Co.* v. *Trustees of Hart*, 28 Vt. 71; *Hunter* v. *Case et al. and Trustees*, 20 Vt. 195.

PECK, J. The question in this case is whether upon the facts reported by the commisioner the trustees are chargeable.

It is claimed on the part of the plaintiff that the deed executed to the trustees by the principal debtor is an assignment, and that it is void under our statutes relating to assignments. It is not claimed on the part of the trustees that there has been a compliance with the requirements of the statute regulating assignments for the benefit of creditors, but it is insisted that it is not an assignment within the meaning of that statute.

We are all of opinion that the deed is not an assignment within the meaning of the statute, and therefore not rendered void by reason of a non-compliance with its requirements. In order to come within the statute regulating assignments, there must be a trust created for the benefit of some person, other than the assignee or grantee. It has often been decided that a transfer directly to a creditor of the grantor or assignor, simply to secure a debt due from the latter to the former, does not come within the statute. The same rule applies where the sole purpose of the transfer is to secure a liability incurred by the assignee or grantee for the assignor or grantor. Such being the objects and purposes of the deed in question, it is not obnoxious to the provisions of the statute. The deed is a mortgage to secure debts which the mortgagor owed to the mortgagees, and liabilities which the mortgagees were under for the mortgagor. It is true it contains a power of sale in the mortgagees to accomplish that purpose, but that does not essentially change its character. Nor does the provision that the mortgagees are to have possession of the

real estate and fixtures mortgaged, to complete unfinished jobs and the manufacture of certain lumber conveyed, have that effect. As the property was situated, that was a reasonable provision to prevent waste and sacrifice, and to make the property more productive as a security. The commissioner finds that the property was not disposed of and the business closed as soon as was expected when the deed was executed, but was continued along in consequence of the depression in business, with a view to realize more out of the property, and that this was by the acquiescence of the parties to the transfer. This subsequent change of purpose and management of the property can not have the effect to render the deed void under the statute relating to assignments.

We do not find from the report, looking at the whole facts, that the deed was fraudulent in fact and void for that reason as against creditors. The trustees, some of them, had attached some of this property to secure their debts against the principal debtors. The principal debtors had arranged the suits by executing bills of sale of some of the property. These bills of sale were held at the time of the execution of the deed. Other bills of sale from the principal debtors were held at the same time by others of the trustees as security. The deed in question was taken in lieu of the bills of sale. Although it is found that the deed was taken by the trustees fearing they had not taken sufficient possession under the bills of sale to hold the property against creditors, and fearing it would be attached, yet it is evident the purpose was to secure themselves and get a preference over other creditors. This the trustees had a right to do, and the principal debtors had a right to give such preference. There is no such corrupt purpose to defraud creditors found by the commissioner as will avoid the deed.

The deed being valid, and it not being claimed by the counsel for the plaintiff that the trustees have realized enough to pay their claims and liabilities, the trustees cannot be made chargeable on account of moneys in their hands, or that have come to their hands under the assignment. But it is insisted that the trustees should be made chargeable for the property in their hands under the assignment. But as mortgagees the trustees have a right to hold the security till their debt is paid. If the creditor claims there is a surplus

of property, he must redeem it by paying the lien of the trustees. This he did not do, or offer to do, in the county court; nor does he make any such offer now.

It is claimed, however, that the deed is to the trustees jointly, and that they cannot hold the funds and property for their several debts against, and liabilities for, the principal debtors. The deed, it will be seen, recites these several and individual debts and liabilities, as the consideration of the conveyance, and they are referred to in the rendition of the deed. These debts and liabilities, though several, come clearly within the scope of the mortgage deed.

It appears that as to Gregory, it was supposed by the parties to the conveyance, at the time the deed was executed, that the principal debtors were indebted to him. How the fact was at the date of the deed does not appear by the report; but the report shows that at the time of the hearing before the commissioner, Gregory was indebted to the principal debtors $1,668.64. The plaintiff claims that Gregory should be held chargeable for that sum. It appears that Gregory was at the date of the deed liable for the principal debtor, but in what sum does not appear. That indebtedness was afterwards satisfied out of the principal debtors' property; but whether out of the property conveyed by the deed does not appear. But it also appears by the deed that all the principal debtors' book accounts were conveyed to the trustees. If this $1,668.64. was a book account, it was conveyed by the deed, and belongs to the other trustees, and can not be drawn out of Gregory's hands by the other creditors of the principal debtors till the lien of the other trustees is discharged. The most reasonable presumption is that this debt was a book account; for had it existed in notes or written evidences of debt, the parties would probably have known which way the balance was. We cannot assume it existed in some other form for the purpose of excluding it from the operation of the deed.

The $134.28, which the plaintiff's counsel insist the trustees should be made chargeable for, grew out of a transaction between May and Gould, two of the trustees, and the principal debtors. May and Gould became liable to Chamberlin & Fletcher for the principal debtors, and took from the principal debtors certain notes against Varney, Renfield & George as security, which they collected

and paid the debt to Chamberlin & Fletcher which left $134.28 balance in their hands.  This balance, in pursuance of an agreement between May and the principal debtors, entered into at the time they took the notes, was paid to the West Concord Machine Shop Company.  All this took place since the commencement of this suit. Whether the trustees, or any of them, could be made liable for this item or not if this item stood alone, it is not necessary to decide.   It is clear that they cannot be made chargeable for it so long as upon the whole case there is no balance due from the trustees to the principal debtor.

There is no ground upon which the trustees can be made chargeable.

Several important questions have been discussed by counsel which would have arisen to be decided had the commissioner found that the transfer was fraudulent and void as against creditors.   These questions we do not pass upon, as they are not material, as we do not hold the deed void.

Judgment of the county court discharging the trustees affirmed,