AUGUSTUS CLAFLIN, Administrator, *v.* C. P. KIMBALL; CENTRAL VERMONT RAILROAD COMPANY and Others, Trustees; and GEORGE NICHOLS and Others, Claimants.

*Trustee Process. Assignment. Gen. Sts. c. 67.*

K. assigned to N. and F., through whom he had borrowed money, all the money due to him from C., the amount of which was in dispute, to secure them for what he owed them, or either of them, or should thereafter owe them, and to pay two debts that were specially named. The writing provided that the assignees should have full control of the fund thereby assigned, and use K's name to recover the same. The assignees agreed with the creditors named in the writing, and with another to whom K. soon afterwards gave an order on them, that they would pay their several claims, if funds sufficient therefor and to pay what K. owed them should come

to their hands under the assignment. The sum due from C. was afterwards agreed on, and a part thereof more than sufficient to pay what K. owed them and to pay said three creditors was paid thereon. K. afterwards gave orders on the assignees to his several creditors to an amount more than as large as that part of the fund that would not be needed to pay such precedent claims ; and the assignees, although they refused formally to accept them, did formally accept notice thereof. While affairs were in that posture, other creditors of K. brought suits against him, summoning the assignees and C. as trustees, and the assignees entered as claimants. *Held*, that whether the writing was so far an assignment for the benefit of creditors therein named as to be obnoxious to chapter 67, Gen. Sts. was immaterial, for that the attaching creditors did not attach till the assignees had become personally bound and had ceased to hold the debt assigned except for their own protection ; that although the holding under the assignment operated remotely for the benefit of other creditors to whom the assignees became bound, the assignment did not for that reason come within the scope of that statute ; that the giving of the orders of which the assignees had only accepted notice, together with such acceptance, operated as an equitable assignment of the fund to that extent, so that K. had parted with all his interest therein ; and that therefore the trustees should be discharged.

TRUSTEE PROCESS. A commissioner was appointed, who reported the following facts :

In July, 1875, the defendant, who had become financially embarrassed in the performance of a contract with the Central Vermont Railroad Company for grading, bridging, fencing, &c., on the line of the White River & Montpelier Railroad, and was being sued by certain of his workmen, applied to George Nichols and George M. Fisk for assistance ; and Nichols and Fisk, believing money to be due to him under his contract, although there was a dispute between him and the company in regard to the amount, signed with others a note payable to the Northfield National Bank, the proceeds of which the defendant had and applied to the settlement of said suits. Thereupon on July 27, the defendant by writing duly signed assigned to Nichols and Fisk all the money due to him from said company, to secure them for what he owed them, or either of them, or should thereafter owe them, and to pay the Northfield Savings Bank about $900 and J. C. B. Thayer $600. The writing specified that the assignees were to have full control and management of such money and to use the defendant's name " in suit or suits for the same." The assignees gave said company immediate notice of the assignment, and the company afterwards recognized their claim to the fund thereby assigned. On July 28 the assignees received from the company

in payment on said contract the sum of $676.17. On October 14, 1875, the defendant gave the assignees an order on the company for $1,562, to pay certain men who had been engaged in the work of bridging, and on December 27 the company sent the assignees $1000, which they indorsed thereon. On the day after the assignment, the assignees applied the money they then received to the payment of the note they had signed as aforesaid, and from that time up to near the end of January, 1876, they continued to make payments at intervals to the defendant, and on his account to men to whom he was indebted and on obligations by the assignees incurred on the defendant's account, until at the end of that time they had so paid, in all, the sum of $1,966.87. At some time after the assignment, but before November 1, J. C. Houghton, who was engaged in making fence for the defendant, had conversation with Nichols, whereby it was understood that there would be funds enough in the hands of the assignees to pay his claim; but the commissioner did not find that Nichols said it should be paid. On November 1, the defendant gave Houghton a written order on the assignees for $1,190.27, which Houghton left with Nichols, and which Nichols thereafter kept; but Nichols did not formally accept it, nor formally accept notice thereof, on the part of the assignees. From those facts the commissioner found that the order was accepted in so far as the assignees should receive funds in excess of the amount necessary to meet " specific demands of the assignment and the amounts," which the assignees had before then paid, or bound themselves to pay, by the defendant's direction. In December, and in February, 1876, the defendant gave orders on the assignees in favor of various individuals to the amount of $2,120.11. Those orders the assignees refused to accept, but they accepted notice thereof in writing. On May 30 this action was brought, and Nichols, Fisk, J. Gregory Smith, and said company, were summoned as trustees, and Houghton was cited as claimant. An action, to which this action was subsequent, was also brought on the same day at suit of other creditors against the same parties. Other actions were subsequently brought by other creditors. On September 18, the assignees, acting on written authority from the defendant, effected a settlement of the defend-

Claflin *v.* Kimball.

ant's claim against the company, wherein it was agreed that the company should pay the assignees the further sum of $5,500. On the next day the company paid the assignees $3,000, and, on December 7, 1877, the further sum of $562, which was the balance due on the order on which a payment of $1000 had previously been made. The remainder of the sum so agreed on was never paid to the assignees, but remained in the hands of the company. On September 19, the assignees paid the Northfield National Bank $557.44 on account of notes to the amount of $500 given by the defendant before this action was brought, and a note for $50 which was given afterwards, all of which notes were either signed or indorsed by Nichols. On the same day they paid Nichols $100 on the order of the defendant for advances for life insurance and other matters; and on the same day they deposited $2000 in the Northfield Savings Bank to meet claims there held against them, which then amounted, with interest, to $1,850.96, exclusive of the sum of $135 hereinafter mentioned, with interest thereon. Those claims consisted of the debt of $900, mentioned in the assignment, which was incurred by the defendant in 1868, and was secured by mortgage, signed by the defendant and his wife, on a house in Northfield in which the defendant and his wife lived, but which the wife owned; the debt of $600, mentioned in the assignment, which was for money that Thayer let the defendant have in July, 1875, to pay his help, which was secured by a sweeping mortgage on the same property, and which had been assigned on consent of the defendant to said bank; a debt on the defendant's note for $212, discounted by said bank on or about August 6, 1875, which the defendant directed Fisk as assignee to pay from the funds to come into his hands; and a debt of $135 to Thayer, secured by said sweeping mortgage. It had been agreed between said bank and the assignees, in August, 1875, that those debts should be paid if the assignees received funds sufficient for that purpose; but it did not appear that the debt of $135 was specially mentioned in that agreement, or that it was agreed that it should be paid, unless such agreement was to be inferred from the fact that the deposit was large enough to a little more than cover it, together with the other debts. It was agreed when the deposit

2

was made that the deposit, which was made in the names of the assignees, should remain in their names, unapplied to the payment of the first-named of those debts, till the assignees felt safe to have it so applied under order of court. In October, 1876, and at subsequent times the assignees paid out other small sums. At the hearing before the commissioner, the plaintiffs in the first named action and the assignees entered as claimants, subject to objection by the plaintiffs.

The commissioner found that the claimants Nichols and Fisk were entitled to the funds in the hands of said company; that they and the other claimants were entitled to the funds in their hands; and that at the time of the service of process Nichols and Fisk had in their hands no goods, &c., of the defendant, and should therefore be discharged. There was also an alternative finding that is not material to the question decided. At the March Term, 1878, the court, REDFIELD, J., presiding, rendered judgment that the trustees be discharged with costs; to which the plaintiff excepted.

*Heath & Carleton*, for the plaintiff.

The assignment was invalid as an assignment for the benefit of creditors other than the assignees themselves. Gen. Sts. c. 67; *Noyes* v. *Brown*, 33 Vt. 431; *McGregor* v. *Chase*, 37 Vt. 225; *Bank* v. *Strong*, 42 Vt. 295.

If this be true, the court will not say as matter of law that there was a constructive transfer of the whole fund to the assignees before service of process, but will say, rather, that they have a lien to the extent of their liability. *Blake* v. *Buchanan*, 22 Vt. 548; *Noyes* v. *Brown, supra.*

They have no lien as to the Houghton claim, because they assumed no liability as to that if they did not receive funds. Neither did the assignees assume any liability as to orders and payments subsequent thereto.

*George M. Fisk*, for trustees and claimants, cited *Noyes* v. *Brown*, 33 Vt. 431; *Hutchins* v. *Watts*, 35 Vt. 360; *Thayer* v. *Kelley*, 28 Vt. 19; *Wescott* v. *Potter*, 40 Vt. 271; *Smilie* v. *Ste-*

Claflin *v.* Kimball.

*vens*, 41 Vt. 321; *Bishop* v. *Hart's Trustees*, 28 Vt. 71; *Williams* v. *Little*, 35 Vt. 323.

*C. W. Porter*, for the claimants.

The order in favor of Houghton operated after notice as an equitable assignment of so much of the fund.   2 Story Eq. Jurisp. ss. 1043, 1044; *Blin* v. *Pierce*, 20 Vt. 25; *Watson* v. *Duke of Wellington*, 1 Rus. & M. 605; *Morton* v. *Naylor*, 1 Hill, 583; *Moody* v. *Kyle*, 34 Miss. 506.   And such order gave Houghton a specific lien on the fund.   *Yeates* v. *Grover*, 1 Ves. Jr. 280.   It was not necessary for the assignees formally to accept the order, to perfect such assignment.   *Blin* v. *Pierce, supra; Wescott* v. *Potter*, 40 Vt. 271.

Such an assignment will be protected against subsequent attachment by trustee process.   *Noyes* v. *Brown*, 33 Vt. 431; *Wakefield* v. *Martin*, 3 Mass. 558; Drake Attach. s. 527.

The opinion of the court was delivered by

Ross J.   The defendant, July 25, 1875, sold, transferred, and assigned to the trustees, Nichols and Fisk, all money due him from the trustee, the Central Vermont Railroad Company, to secure them for what he owed them, or either of them, or should thereafter owe them, and to pay the debts therein specified to the Northfield Savings Bank and to Thayer.   It gave them " full control and management of said money", and the use of the defendant's name in suit or suits for the same.   Of this the railroad company were duly notified.   No question is made but that this was a valid assignment of this claim as between the parties thereto, and that it gave Nichols and Fisk the right to recover the entire claim from the railroad company in the name of the defendant. Whether it was so far an assignment for the benefit of creditors, in being made for the benefit of the savings bank and Thayer, as to be obnoxious to the provisions of chapter 67, Gen. Sts., relating to assignments, is immaterial to consider, under the facts found by the commissioner; for, if originally subject to the provisions of chapter 67, it was valid between the parties thereto, and only inoperative against the creditors of Kimball.   His creditors did not intervene

until after the relations of Nichols and Fisk to the savings bank and Thayer debts, as created by the assignment, had become entirely changed, and they had become personally obligated to pay those debts, if the money received by them on the claim should prove sufficient to enable them to do so. Hence, if originally for the benefit of creditors, Nichols and Fisk had ceased to hold the debt assigned for that purpose when the plaintiff and other creditors of Kimball attempted to attach it by bringing trustee suits. At the time this and the other trustee suits were brought, Nichols and Fisk, so far as they held the debt against the railroad company by virtue of the assignment, were holding it for their own protection against liabilities which they were under for the defendant at the time the assignment was made, and which they had assumed subsequently thereto. On the facts found, they had assumed the payment of the debts in favor of Thayer and of the savings bank, and of the order in favor of J. C. Houghton, provided the assigned debt proved sufficient to pay these claims after discharging their liabilities for Kimball antecedently incurred. The assigned debt did prove sufficient to discharge these with the claims antecedently incurred by them, so that they have become personally liable for their payment. Nichols and Fisk could lawfully hold the assigned debt for the discharge of all the liabilities which the defendant was under to them personally, jointly, or severally, and which they had incurred for him ; and, although such holding of the assigned debt for the latter class of liabilities, remotely and secondarily operated to the benefit of certain creditors of the defendant, the assignment did not for that reason fall within the operation of the provisions of chapter 67, Gen. Sts. *Noyes* v. *Brown*, 33 Vt. 431 ; *McGregor* v. *Chase*, 37 Vt. 225. Although the assignment of July 25, 1875, conveyed to Nichols and Fisk the entire assigned debt, and they had the right to collect the whole of it from the railroad company, yet, the balance of it, above so much thereof as was necessary to discharge all the defendant's liabilities to them jointly or severally, and the liabilities which they had incurred for him, they held for the benefit of the defendant so far as they held such balance by force of that assignment. Such balance, if nothing further had been done by

the defendant, in regard thereto, the plaintiffs could have reached by trusteeing the railroad company. *Fay* v. *Smith*, 25 Vt. 610; *Downer* v. *Tarbell*, 32 Vt. 22; *Perrin* v. *Russell*, 33 Vt. 44. But the plaintiff could thus reach it, not because the assignment of the claim made July 25, 1875, was obnoxious to the provisions of the statute relating to assignments for the benefit of creditors, but because the statute allowing such debts to be attached and factorized by the trustee process, subrogated the plaintiff to the rights of the defendant as between him, the railroad company as his debtor, and Nichols and Fisk his assignees. It is only by taking the place, and coming into the rights, of the defendant in regard to such balance that the plaintiffs in the trustee suits can avail themselves of such balance as would be left coming to the defendant by virtue of the assignment of July 25, 1875, and of what had been done by the assignees under it before the trustee suits were brought. On the facts reported by the commissioner, the defendant Kimball, by orders in favor of other creditors drawn on Nichols and Fisk, and of which they had been duly notified, had effectually assigned and appropriated, so far as he was concerned, all such balance of the assigned debt as Nichols and Fisk would have held for his benefit, if it it had not been for such orders. Such orders, with notice thereof to the assignees, Nichols and Fisk, operated as an equitable assignment of such balance. *Noyes* v. *Brown*, *supra*; *Hutchins* v. *Watts*, 35 Vt. 360; *Spafford* v. *Page*, 15 Vt. 490. Hence, when the plaintiff's trustee writ with others, was served on the trustees, the railroad company, and Nichols and Fisk, there was not a dollar of the assigned debt which the defendant Kimball could have enforced against the railroad company, or against Nichols and Fisk. Kimball at that time had parted with all his interest in the assigned debt to Nichols and Fisk and to the persons to whom he had given orders on them. So far as Nichols and Fisk were holding the assigned debt for the benefit of persons holding Kimball's orders on them unaccepted with notice to them thereof, they were holding the same for the benefit of the creditors of Kimball, but not by virtue of the assignment of July 25, 1875, but by virtue of the orders. That assignment would not, therefore, by its own force and scope,

be for the benefit of creditors, and so not obnoxious to the provisions of the statute relating to assignments for the benefit of creditors. When the plaintiff takes the place of Kimball in regard to the balance of the assigned debt appropriated by the orders, there is nothing left in the hands of any of the trustees for the trustee process to attach or operate upon.

*Judgment affirmed.*