JOEL HALL and others, v. THE CITY OF BUFFALO and others.

A corporation consists of officers and agents, some of whom must represent the corporate body in such a sense, as to render him a proper party to receive notice for and on behalf of such corporation: Per DENIO, Ch. J.

The comptroller of the city of Buffalo is such officer, according to the established usage of the city, to receive notice of claims upon a fund to be paid upon a contract between the city and a third party.

Where the contractor had drawn orders in favor of divers parties upon such fund, and had directed the orders to the comptroller of the city, which orders had been presented to him, and by him had been attached to the contract of the drawer, *held*, that the city had notice of such claims, and were liable to the extent of the funds in their hands out of which said orders were to have been paid.

Such orders were equivalent to an assignment of so much of the fund in the treasury of the city, and the city was thereby constituted trustees of the parties interested.

In equity, an order given by a debtor to his creditor, upon a third person having funds of the debtor, to pay the creditor out of such funds, is a binding equitable assignment of so much of said fund.

THIS action was in the nature of a bill in equity to enforce the payment of, and to settle the right of the plaintiff, and of the defendants, other than the city of Buffalo, to certain moneys which it was alleged the city corporation owed to Moses Baker, one of the defendents, on a contract between him and the city, for the grading of certain public grounds, which moneys it was alleged Baker had assigned in separate sums to the several plaintiffs, and to some of the defendants who had declined to become parties plaintiffs in this action.

The case established by the pleadings and proofs, was substantially as follows : In October, 1849, Baker entered into a contract with the city, to fill up and grade certain market grounds at a certain price per cubic foot, to be paid in orders on the general fund of the city. The work had been performed, and certain payments had been made to Baker, and to persons whom he had authorized to receive portions of the money ; and on the first day of June, 1852, an adjustment took place by which it was ascertained that the sum of $1,003.26,

remained unpaid on the contract. The present controversy related to this balance.

During the progress of the work, and in the year 1850, Baker drew four several orders on Mr. Cadwallader, the comptroller of the city, in favor of the plaintiff, Edwin Rose, for different sums, making together an amount somewhat larger than the balance above mentioned as unpaid. They each contained a request that the comptroller would pay to the individuals named in them, or order, the sums mentioned in them, " in orders on my contract in filling Elk street market grounds when the same are drawn." Another order was drawn by Baker on the comptroller, in July, 1850, for $1,000, in favor of the defendant, A. D. Patchen, as administrator of L. F. Tiffany, upon which Patchen sued the city and Baker, but the case had not been determined when the present action was tried. During the same year, 1850, Rose drew certain other orders, called in the case *sub*orders, on the comptroller in favor of other individuals for several amounts, making together a somewhat less amount than the aggregate of the four orders. The idea appears to have been, that Rose, by virtue of the four orders which Baker had drawn in his favor, being entitled to receive the aggregate amount mentioned in them, again transferred that amount to the several persons to whom the suborders were given. Some of these last mentioned orders were again assigned; and Rose, who gave them, had purchased and taken up some of them. The plaintiffs, and those of the defendants who claim portions of the money, were holders of these drafts at the time of the commencement of this action. The referee, before whom the case was tried, found that all the orders were drawn for valuable considerations. They were taken to the comptroller by the several payees, and he placed them on file, pinning them to Baker's contract with the city. The following is contained in the conclusions of fact of the referee : " It was customary in the comptroller's office, when contracts for work had been made in similar cases, to receive orders and sub-orders, like the ones in question; and when orders were directed to be drawn by the common council, pursuant to

such contract, to deliver orders to the persons holding orders therefor, and to divide the orders for that purpose."

On the 14th November, 1861, Baker served on the comptroller a written notice to the effect that he countermanded all orders given by him to said Rose, for orders on the Elk street market contract, and required the comptroller to deliver those thereafter to be drawn for that work, only to said Baker or his authorized agent.

Upon the ascertainment of the balance due on Baker's contract, in June, 1852, the common council passed a resolution directing an order to be drawn for that balance in favor of Baker, upon the general fund; and the city clerk accordingly drew such an order for the $1,003.26, and delivered it to the city clerk. After this, Baker commenced an action against the city on the contract, and obtained judgment for the above mentioned balance, which judgment was paid by the city. None of the persons holding any of the orders were made parties to that action.

The referee decided that the city of Buffalo was liable to pay the aforesaid balance with the interest thereon from the time of the adjustment, and he proceeded to distribute the same among the several holders of the drafts according to what he considered their respective rights and interests in the fund. It appearing that after the whole balance was applied, Baker would be indebted to Rose, upon the orders, in $269.43, judgment was rendered in favor of Rose against Baker for that sum. The plaintiffs were awarded their costs against the city.

On an appeal taken by the city corporation to the General Term the judgment was there affirmed, upon which the city appealed here.

*H. L. Cutting*, for the appellant.

*H. C. Day*, for the respondent.

DENIO, Ch. J. It is not surprising that the common council of the city should have declined the task of settling the rights of the claimants to the moneys which Baker had

earned, and should have preferred to cut the knot, which it had become difficult to untie, by acting upon Baker's revocation of the orders which he had given, and paying the money directly to him. They seem to have made that election by directing a draft on the treasury, for the balance, to be given him. It is not apparent why the draft was not paid without a suit. If it was thought that a judgment in his favor would protect the city against the demands of the parties holding the orders, it was a mistake. If these parties had acquired claims on the funds which the city was bound to recognize, that obligation could not be discharged by any judgment resulting from a litigation to which they were not parties. The case therefore is the same as though they had voluntarily paid the money to Baker, in total disregard of the orders which he had given.

The evidence is quite satisfactory to charge the city with notice of the existence of these orders. They were actually lodged with the comptroller soon after they were drawn, and this was in pursuance of a practice prevailing in that office. The special duties of the comptroller are not prescribed by the charter, further than by declaring that any financial power or duty confided to any city officer may be vested exclusively in him. (Laws 1843, p. 120, § 12.) This authority, together with the custom found by the referee, was sufficient, *prima facie*, to cast the onus upon the city of showing by their by-laws that his duties did not embrace the subject of the city indebtedness. A corporation consists of officers and agents, some of whom must represent the corporate body in such a sense as to render him a proper party to receive such a notice. Baker's revocation of the orders was served upon the comptroller, and as the common council acted upon that revocation, the presumption is inevitable that the revocation came to its knowledge, and as it pre-supposed the existence of orders, it was sufficient at least to put it upon inquiry. I do not say that what was done by the comptroller amounted to a contract with the holders of the orders in the nature of an acceptance or an engagement to

pay them.  It was sufficient to charge the city with notice of the orders and of their contents.

The question then is whether the orders, they having been given for value, amounted to an assignment or appropriation of portions of the indebtedness which was accruing in Baker's favor against the city, to their benefit respectively. I do not suppose that any privity of contract is established between the city and the holders of the orders.  It is sufficient if these holders, by their transactions with Baker and the notice to the corporation, had acquired an equitable interest in the fund.  If that be established, it follows that the city, as the holder of the fund, was the trustee of the parties interested in it, and could not equitably do anything to prejudice the interest of these parties.  That the holders of the orders had acquired such an interest seems to me well established by authority.  In *Row* v. *Dawson* (1 Ves., Sr., 331) it appeared that one Gibson had lent money to parties under whom the defendant claimed, and gave them an order on Swinburne, the deputy of Horace Walpole, who was an officer of the exchequer, for the payment out of the moneys due to him from Walpole, out of the exchequer, of £400 to one of the persons, and £200 to the other, " value received." The question was whether the representatives of these persons were entitled to a specific lien upon the moneys due from the exchequer to the estate of Gibson, he having become a bankrupt, and it was held that they were entitled to such lien.  Lord HARDWICKE said : " This draft, which amounts to an assignment, is deposited with the officer, Swinburne, and therefore is attached immediately upon it, so that Swinburne could not have paid the money to Gibson, supposing he had not been bankrupt, without making himself liable to the defendants, because he would have paid it with full notice of the assignment for a valuable consideration."

In *Yeates* v. *Graves* (1 Ves., Sr., 280), the facts were that Dawson owed Yates and Brown £450, for which they held his note.  By an arrangement between Dawson and Graves and Dickinson, the latter was to purchase a dwelling-house of Dawson.  Yates and Brown pressed Dawson for payment on

the note, and he gave them an order on Graves and Dickinson for the amount of the note out of the purchase-money of the house " for value received" and the note was given up. The order was not accepted, but Graves and Dickinson verbally agreed that when the purchase-money was to be paid Brown should receive notice to attend. Dawson afterward became bankrupt; Lord Chancellor THURLOW said, " this is nothing but a direction by a man to pay part of his money to another for a foregone valuable consideration. If he could transfer he has done it; and, it being his own money, he could transfer. The transfer was actually made. They were in the right not to accept, as it was not a bill of exchange. It is not an inchoate business. The order fixed the money the moment it was shown to Graves and Dickinson ;" and he made a decree accordingly.

Passing over a considerable period of time we come to *Lett* v. *Meries* (4 Lewinz, 607), where a builder, who was erecting a house under a contract, gave an order to one who had furnished him with lumber, for certain sums out of moneys which would become payable to him on the contract. It was held a good equitable assignment, and so much of these moneys as the orders called for was decreed to be paid to the holder of the order. See also, to the same general purport, *Burn* v. *Carvalho* (4 Mylne & Craig, 690), and *Rodeck* v. *Gandall* (15 Eng. Law and Eq., 22). In the first of these cases Lord Chancellor COLDENHAM laid down the equitable principle in these words: "In equity, an order given by a debtor to his creditor upon a third person having funds of the debtor to pay the creditor out of such funds, is a binding equitable assignment of so much of the fund." He quotes the dictum of Lord ELDON in *ex parte Louth* (3 Levinz, 293), as follows : " It has been decided in bankruptcy that if a creditor gives an order on his debtor to pay a sum in discharge of his debt, and that order is shown to the debtor, *it binds him.* On the other hand, this doctrine is brought into doubt by some decisions in courts of law which require that the party receiving the order should in some way enter into a contract. That has been the course of *their* decisions; but

it certainly is not the doctrine of this court." Lord COLDEN-
HAM adds, that "it is upon this principle that assignments of
future freight, and of non-existing but expected funds
have been enforced in equity."

The principle of these cases has been adopted and frequently
acted on in this country. (2 Story's Eq., 1044; *Peyton* v.
*Hallet*, 1 Caines, 363; *Waters* v. *Barker*, 12 Johns., 276;
*Bradley* v. *Root*, 5 Paige, 362; *Martin* v. *Naylor*, 1 Hill,
583.) Many other cases of a similar character are referred
to in those which have been cited. In *Field* v. *The Mayor,
etc., of New York* (2 Seld., 179), a similar question came
before this court. One who had contracts with the corpora-
tion of the city of New York for printing, for a valuable
consideration, assigned, to a party under whom the plaintiff
claimed, his bills against the corporation, to the amount of
$1,500, to be paid after two prior assignments had been
satisfied. The only notice given to the city was a letter to
the comptroller, accompanied with a copy of the assignment.
It was held that the assignment was a transfer enforceable in
equity, and that the plaintiff was entitled to a decree against
the city. (See also *Lowery* v. *Steward*, 25 N. Y., 239.)

The orders in these cases were not bills of exchange. They
were payable out of a particular fund, and that fund was to
arise and be made available subsequently to the drawing of the
orders, and there is some doubt whether they could be consid-
ered as payable in money. The judgment which it is pro-
posed to give will not be in any respect hostile to the cases which
hold that the drawee of a proper bill is liable to the holder
only upon an acceptance of the bill. (*Luff* v. *Pope*, 5 Hill,
417; *Harris* v. *Clark*, 3 Comst., 93; *Mandeville* v. *Welch*, 5
Wheat., 277.) The point decided in the last case was that
the drawing by a creditor of a bill upon his debtor in favor
of a third person, with some other slight circumstances, did
not amount to an assignment of the debt. Stress was laid
by the counsel, who argued against the position, that it
was an assignment, upon this circumstance, that the bill was
general and not payable out of a particular fund. What
was said by Judge STORY, in giving the reasons of the

court, of the impossibility of deciding a demand by an assignment of a portion of it, was probably correct in the application which he made of the principle, but if it was intended to state that equity would not protect an assignment of part of a demand, the dictum is hostile to nearly all the cases I have referred to, and especially to the one in this court which distinctly presented that feature.

The orders in this case were not expressed to be for value received, as in some of the cases cited. It was, however, proved and found that they were given for value. I do not think it was necessary for the city to have had specific notice of that circumstance. The drawing of the first class of orders, and the transfer by Rose of the interest which they were supposed to create, was sufficient evidence to put the city upon inquiry, and to show conclusively that Rose was not the mere agent of Baker. A proper inquiry would have disclosed the fact that they were given for a valuable consideration.

The appeal being on behalf of the city alone, no question is presented respecting the distribution of the money among the different claimants. The recovery was for the precise amount which the city would have owed Baker if he had not parted with his claim. The orders which he had given to Rose exceeded the whole balance in his favor. It cannot, therefore, be said that injustice has been done to the city, even should the disposition of the moneys be inaccurate, of which I have found no evidence.

It is objected that it was not proved that Baker was insolvent; and that is true, though this contest among his creditors leads to a strong inference that such was the fact. I do not see, however, that it was essential to establish that fact. If, as has been held, the drawing of the orders was a transfer *pro tanto* of the debt, the holders were entitled to resort in the first instance to the city to enforce their demands, and it would have been no answer for the city to say that they might have had a remedy against Baker.

It is readily seen that the principle which we feel bound to act upon may operate inconveniently upon parties owing

demands of this character, by obliging them to arrange with several parties claiming under the one with whom they had contracted.    But the same difficulty frequently arises where a creditor has parted, by mere formal transfers, with the whole or portions of the debt.    The law affords the debtor a remedy in the nature of a suit of interpleader, so that it is his own fault if he pays to a person not entitled.    If the rule would still operate inconveniently to municipal corporations, who are, perhaps, more exposed than others to be embarrassed with conflicting claims, it is for the legislature to protect them.    They might also provide by express agreement that they should not be obliged to recognize derivative claims arising out of a contract for a public improvement.

I am in favor of affirming the judgment appealed from.

INGRAHAM, J.    The indebtedness of the city of Buffalo for the amount claimed by Baker as due him is admitted, it being alleged in the complaint and not denied in the answer. The only allegations denied in the answer of the appellants are; 1. As to the drawing of the orders by Baker; 2. The acceptance of the orders by the city; and, 3. Whether the assignment of the orders set forth in the complaint were executed.    The first and third of these defenses were proved on the trial and were found by the referee against the defendants.    I do not understand the appellants as insisting on these defenses.    The only remaining one set up in the answer is to the acceptance by the defendants of the orders, so as to bind the city to the payment.

The referee finds that Baker drew five orders on the comptroller in favor of Rose for the sum, in all, of $1,189.79. That Rose delivered the orders to the comptroller, who annexed them to the contract of Baker.    The amount due Rose was subsequently reduced somewhat by repayment. Afterward the amount due Baker from the city was adjusted and an order for that amount was directed by the council to be drawn in favor of Baker.

There can be no doubt that the assignees of such a claim might give notice of the assignment to them and recover

26

the same without an actual acceptance by the debtor of the order or promise to pay to the assignee. This was held in *Morton* v. *Naylor*, 1 Hill, 583. COWEN, J., says:—" The order was an equitable assignment of the rent in question, with notice to Morton who was bound to pay it according to the order whether he had accepted it or not." (*Wheeler* v. *Wheeler*, 9 Cowen, 34.) Nor is it any objection to a recovery under such an order or assignment that it is not for the whole of the balance due. (*Taylor* v. *Bates*, 5 Cowen, 376; *Pattison* v. *Hull*, 9 id., 747; *Field* v. *The Mayor, etc., of New York*, 2 Seld., 179.) Whether there was or not any valid defense in the matters relied on by the appellants of a payment to Baker is unnecessary to be decided in this action. No such defense was set up in the answer and the appellants have no right to avail themselves of the finding of the referee which may have been necessary under the issues raised by the other defendants.

The objection that notice to the comptroller was not notice to the city of Buffalo is taken by the appellants. In *Field* v. *The Mayor, etc., of New York, supra,* the same objection was taken and overruled. The court say the notice of the respondent's claims was served upon the comptroller while in his office, engaged in the duties thereof, and was beyond all doubt sufficient.

I think the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.