LEVI BALLOU, APPELLANT, *v.* JAMES BOLAND, IMPLEADED, ETC., RESPONDENT.

*Supplementary proceedings — lien acquired by — lost by discontinuance of — not revived by creditor's bill — Equitable assignment of fund — what sufficient to constitute.*

Where, in supplementary proceedings, instituted by a judgment-creditor, an injunction is served upon the debtor, and a person holding property belonging to him, and such proceedings are subsequently abandoned before the appointment of a receiver therein, the lien acquired by the judgment-creditor upon such property is lost, and is not revived or continued by the commencement of an action, in the nature of a creditor's bill against the debtor, the person who held the property, and one to whom it was subsequently transferred.

Although an ordinary bill of exchange or check on a bank does not operate as an equitable assignment of so much money, so as to vest the title in the payee without acceptance, yet when a particular fund out of which the amount is payable, or the source from which the money is to be derived, is specified, the order operates, with or without acceptance by the drawee, as an equitable assignment of the fund, or so much thereof as is necessary to satisfy the draft; and so operating, it transfers the fund, so that the drawee, having notice of the draft, is bound to keep the fund, as upon a special deposit in his hands for the benefit of the payee.

One who had taken a contract to build a school-house, sub-let the mason work to one Boland, and thereafter drew the following draft upon the person who was to pay for the school-house : " Please pay to James Boland two hundred and forty-nine dollars ($249), being the balance due on contract for building said school-house, the above amount to be paid on the acceptance of the said school-house."

*Held,* that the draft operated as an equitable assignment of so much of the fund as was necessary to pay the same.

APPEAL from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

*George A. Strong,* for the appellant.

*Marshall, Clinton & Wilson,* for the respondent.

TALCOTT, P. J.:

This is an appeal from a judgment in favor of the defendant, entered at the Erie Special Term. The action was in the nature of a creditor's bill, brought by the plaintiff against Richard Caldwell, trustee of school district No. 6, in the town of West Seneca, in Erie county, and James Boland and James H. Day, by which the plaintiff sought to obtain the satisfaction of a judgment originally recovered by Hurley and Stygall against the said James H. Day and assigned to the plaintiff, out of moneys in Caldwell's hands as such trustee, and to have a certain order given by Day on Caldwell, declared fraudulent and void as against the plaintiff.

The facts are as follows: On the 15th of March, 1876, Hurley and Stygall recovered a judgment in the Superior Court of Buffalo against James H. Day for $187.44, a transcript of which was duly filed and docketed in the office of the clerk of Erie county, and execution was issued on said judgment and returned unsatisfied. Afterwards an order was made by the county judge of Erie county, under section 294 of the Code, directed to Richard Caldwell and the said James H. Day, by which they were forbidden from in any way interfering with the property of said Day or any debt due to him. On the 20th day of March, 1876, James H. Day had entered into a contract with Thomas B. Prior, as trustee of West Seneca school district No. 6, to build a school-house for said district, and on the same day Boland made a sub-contract

with Day for the mason work on the said school-house. Prior died before May 22, 1876, and Caldwell succeeded him as the trustee for said school district. The school-house was built under these contracts. On the second day of June, after the service of the injunction order of the county judge on both Caldwell and Day, Boland and Day came to the house of Caldwell to settle up the accounts between them, in respect to the said mason work, and they then settled and agreed that there was due from Day to Boland $249, and Day gave Boland an order for that amount in the words and figures following, to wit: .

"Mr. Richard Caldwell, trustee West Seneca school district No. 6: Please pay to James Boland two hundred and forty-nine dollars ($249), being the balance due on contract for building said school-house, the above amount to be paid on the acceptance of the said school-house.

"WEST SENECA, *June* 2, 1876."      "JAMES H. DAY."

When Boland received the order, he forthwith presented it to Caldwell, who declined to accept it on account of the injunction order, a copy of which had been served on him, and Boland left the order with Caldwell with directions to keep it and the money until this was settled.

The order made by the county judge recited the fact that Richard Caldwell has property of the judgment-debtor (Day), and ordered him to appear before a referee named, at a place therein specified, to be examined concerning the same on the 20th of May, 1876. It did not appear that any examination was ever had, or that anything further was done under the order, except to serve the same on Day and Caldwell, which was done on the 22d and 23d days of May, 1876. Boland knew of the injunction order when he received the order of the 2d of June.

The court, at Special Term, found that the proceedings supplementary to execution against Day, were not further prosecuted after the granting of the order of the county judge, and the same were then dropped. And it was also found, as conclusions of law, that the order by Day on Caldwell, constituting an equitable assignment of so much of said fund, then in the hands of Caldwell as trustee and due to Day, for the building of said

school-house, up to the said sum of $249, and that the lien, if any, which the said Hurley and Stygall acquired on said fund in the hands of defendant Caldwell, by the service of the order in supplementary proceedings, was lost when the said order became *functus officio*, and did not attach to the present action and cannot be enforced in it.

Both these conclusions of law are controverted by the plaintiff. We think, however, the Special Term committed no error as to either one of them. That the lien, if any, acquired by the order of the county judge in supplementary proceedings on the judgment cannot be extended to this suit, so as to create or continue a lien in behalf of the plaintiff for the purposes of this suit, seems to have been directly decided in *Edmonston* v. *McLoud* (16 N. Y., 543), where a similar question was presented. HARRIS, J., delivering the opinion of the Court of Appeals in that case, says: " The equitable lien obtained by a judgment-creditor upon the property of his debtor, by the commencement of an action in the nature of a creditor's bill, does not relate back to proceedings supplementary to execution upon the same judgment which did not proceed to the appointment of a receiver. * * * Such order (for the appointment of a receiver) would have the effect to divest the defendant of "his interest in the property and to vest it in the receiver for the benefit of the plaintiff. * * * I know of no principle upon which the lien acquired by the plaintiff upon the debtor's property by the commencement of this action (which is in the nature of a creditor's bill), can be made to relate back to the proceedings before the county judge. The two proceedings have no proper relation to each other."

If any of the defendants committed a contempt in violating the injunction order of the county judge, he or they must be pursued by appropriate proceedings. We think, also, that the order made by Day on Cadwell constituted an equitable assignment of so much of the amount in the hands of the latter. It seems to us perfectly clear that the intent of the drawer was to specify the particular fund out of which the amount was directed to be paid. A reference to the existing and surrounding facts and circumstances may aid in explaining the intent of a written instrument or contract, and by reference to them, there can be no doubt what

contract or what school-house was referred to and intended by the order.

In *Hall* v. *The City of Buffalo* (1 Keyes, 193), the language of the order was, that the sums be paid "in orders on my contract in filling Elk Street market grounds, when the same are drawn." In *Lell* v. *Meries* (4 Lewinz, 607), cited in the case of *Hall* v. *The City of Buffalo*, where a builder, who was erecting a house under a contract, gave an order to one who had furnished him with lumber for certain sums "out of moneys payable to him on the contract," the order was held to constitute a good, equitable assignment. (See, also, *Lowery* v. *Steward et al.*, 25 N. Y., 239; *Morton* v. *Naylor*, 1 Hill, 583; *Bradley* v. *Root*, 5 Paige, 632; *Field* v. *The Mayor, etc.*, 6 N. Y., 179; *Taylor* v. *Bates*, 5 Cow., 376; Story's Eq. Jur., § 1044.)

The principle derived from these, and other cases which might be referred to, is that, though an ordinary bill of exchange, or check on a bank, does not operate as an equitable assignment of so much money, so as to vest the title in the payee, without acceptance; yet, when a particular fund is specified, out of which the amount is payable, or the source from which the payment is to be derived, the order operates as an equitable assignment of the fund, or so much as is necessary to satisfy the draft, with or without acceptance by the drawee; and so operating it transfers the fund, so that the drawee, having notice of the draft, is bound to keep the fund, as upon a special deposit in his hands, for the benefit of the payee.

The draft was drawn, and notice given to the drawee, on the 2d of June. This suit was commenced in August, so that, if the order operated as an equitable assignment, as we think it did, Boland had acquired an interest in the fund before the lien of the plaintiff under this suit attached.

The judgment should be affirmed, with costs.

Present — Talcott, P. J., Smith and Hardin, JJ.

Judgment affirmed, with costs.