(89 App. Div. 454.)

MERRITT v. BOOKLOVERS' LIBRARY et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. ASSIGNMENT OF CONTRACT—RIGHT OF ASSIGNEE TO SUE.
   The rule that one who is not a party to a contract can only maintain suit thereon when it is for his benefit does not prevent suit by the assignee of an assignable contract.

2. ASSIGNABILITY OF CONTRACT.
   A contract by the keeper of a livery stable to supply horses and wagons to a library, by means of which it might prosecute its business, does not call for any service of a personal character, and is assignable.

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by Edwin P. Merritt against the Booklovers' Library and another. Judgment for defendants, and plaintiff appeals. Reversed.

Argued before BARTLETT, JENKS, HIRSCHBERG, and HOOKER, JJ.

George P. Nicholson, for appellant.
Walter R. Clayton, for respondents.

HOOKER, J. This is an appeal from a judgment of the Municipal Court of the City of New York in favor of the defendants. The action was commenced by the service of summons upon the defendant the Booklovers' Library to recover for the use of the plaintiff's horses and wagon for the month of May, 1903. The Booklovers' Library admitted the rendition of the services and that the amount claimed for the service was due from it, but inasmuch as the defendant Cadmus, as receiver of Samuel C. Pulis, claimed the fund by reason of his receivership, by consent of the parties, it deposited the money in court; Cadmus was substituted as defendant, and the action proceeded between the plaintiff and Cadmus as though the latter had been interpleaded upon the motion of the Booklovers' Library. The litigation then resolved itself into a contest for the fund so deposited.

It appears undisputed from the record that one Samuel C. Pulis, prior to the 31st day of December, 1902, was conducting a stable and supplying horses and wagons to the Booklovers' Library, by means

of which it might transact part of its business; that the furnishing of these horses was under and pursuant to a contract in writing between Samuel C. Pulis and the library, which specified the rate at which the services were to be paid for. On the 31st day of December, 1902, Samuel C. Pulis transferred his business to Charles H. Pulis, there being a chattel mortgage, at the time of the transfer, covering the property, and held by Edwin P. Merritt, this plaintiff. When Charles H. Pulis took possession of the business he gave to the plaintiff a new mortgage for the face of the old one, and, being unable to meet the mortgage on the 1st of May, surrendered his right, title, and interest therein to the plaintiff, in satisfaction of the said mortgage, and at the same time gave to the plaintiff a good and sufficient bill of sale of the business and of the property connected therewith. The bills of sale included, within the schedule of property assigned, "contract for delivery of books on behalf of Booklovers' Library of Philadelphia." The plaintiff took possession of the business on the 1st of May, 1903, and conducted it during that month, and seeks to recover the fund paid into court by the Booklovers' Library as the assignee of the contract made between the library and Samuel C. Pulis, and, having rendered the services required to be performed by that contract in a manner satisfactory to the library, he claims to be entitled to payment of the sum paid into court.

On the 16th day of May, 1903, after proceedings supplemental to execution, the defendant Cadmus was appointed receiver of the property of Samuel C. Pulis, and on the 20th of that month a certified copy of the order appointing him such receiver was served upon the judgment debtor. Cadmus claims the fund now in the court upon the theory that the contract between the judgment debtor and the library was not assignable, and makes the claim that transfers to Charles H. Pulis and to this plaintiff were in fraud of creditors.

In the memorandum written by the trial justice appears this language:

"There never existed any contractual relation between the plaintiff and the Booklovers' Library. The contract was between S. C. Pulis and the Booklovers' Library. In Beveridge v. N. Y. E. R. Co., 112 N. Y. 1 [19 N. E. 489, 2 L. R. A. 648], it is said, at page 26 [112 N. Y., page 496, 19 N. E., 2 L. R. A. 648]: 'Where the plaintiff seeks to base his right to maintain his action against a third party upon a contract made between that party and another, it must be one made or intended for his benefit. Such a beneficial intent must be clearly found in the agreement.'"

We think the view of the justice before whom the trial was had, as expressed in this language, is not correct, and that he erred in supposing that the Beveridge Case is applicable in any manner to the facts presented by this record. The language quoted from that case expresses a principle which has long been incorporated in the body of the law of this state, but the principle has never been understood to apply to cases of contracts which have been assigned to the party who seeks to enforce them. The contract made by the Booklovers' Library did not require the rendition of services personal in character, and the property of Samuel C. Pulis in the contract was an assignable one, which passed to the plaintiff prior to the commencement of this action. The long line of authorities which

establish this principle in this jurisdiction render it out of place for us to enter into any discussion of the principle. Devlin v. Mayor, 63 N. Y. 8; Field v. Mayor, 6 N. Y. 179, 57 Am. Dec. 435; McKee v. Judd, 12 N. Y. 622, 64 Am. Dec. 515; Hall v. City of Buffalo, 2 Abb. Dec. 301; Zabriskie v. Smith, 13 N. Y. 322, 64 Am. Dec. 551; Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209, 31 N. E. 1018; Byxbie v. Wood, 24 N. Y. 607; Tugman v. National Steamship Co., 76 N. Y. 207; York v. Conde, 147 N. Y. 486, 42 N. E. 193. Because the trial justice adopted a view of the law which denied the plaintiff any right to the fund in controversy, his error in that respect was so prejudicial to the plaintiff as to call for a reversal of the judgment, that upon another trial the evidence may be treated upon a consideration of the true rule in this respect.

The judgment should be reversed, and a new trial ordered, costs to abide the event. All concur.