### *Horace Lampson* vs. *Calvin Fletcher*.

When the sheriff has an execution to collect, which issued on a judgment ren-
dered for the amount of a note, negotiated with due notice to the maker, he is
not a trespasser for proceeding to collect the same after the debtor has pro-
cured and shown him a discharge from the nominal plaintiff, the assignor, and
forbid his thus proceeding.

THE plaintiff, *Lampson*, brought his action of *trespass* against
the defendant, *Fletcher*, before a justice of the peace, and declared
against him as follows to wit : " In a plea of *trespass*, for that the
" defendant, heretofore, to wit, on the first day of September, 1823,
" with force and arms, at *South Hero*, aforesaid, took, seized, and
" carried away, a certain two-horse-waggon the property of the
" plaintiff, of the value of sixty dollars ; and other wrongs and in-
" juries then and there did to the plaintiff, against the peace, and
" to the damage of the plaintiff seventy dollars ; to recover which,
" with just costs, this suit is brought."

This action was carried by appeal to the County Court, and
decided upon the following pleadings, in favor of the defendant ;

and was brought by a *writ of error* to this  ⎧ Grand-Isle, Jan. 1828.

court.  ⎩ *Lampson* vs. *Fletcher.*

"And now the defendant in court, by *Blodget* and *Allen* his "attornies, defends the force and injury when, &c. and says "that the plaintiff from having and maintaining his aforesaid ac- "tion against him, (the defendant), ought to be barred; because, "he says, that at the time of the supposed trespass, set forth in "the plaintiff's declaration, he was, and for a long time before, "and ever since has been, the sheriff of said county of *Grand-* "*Isle*, legally authorised to act as such; and that at *South Hero*, "in said county of *Grand-Isle*, on the 31st day of May, A. D. "1823, he the defendant, as such sheriff of *Grand-Isle* county, "as aforesaid, received a certain writ of execution, in favor of one "*Gardner Jennison*, against the said *Horace Lampson*, issued on a "judgment rendered by *Gideon Hoxie*, justice of the peace in "and for the county of *Chittenden*, on the said 31st day of May, "1823, aforesaid, signed by said justice, and bearing date on the "same day and year last aforesaid, for the sum of seventeen dollars "and fifty-two cents damages, two dollars ninety-three cents costs, "and twenty-five cents for said writ of execution, returnable in "sixty days from its date, and directed to the sheriff of *Grand-* "*Isle* county, his deputy, or either constable of *South Hero*, to "collect according to law; and that upon said writ of execution "was a notice in writing, that the same was the property of one "*Ethan Austin* of *Milton*, in said county of *Chittenden*, to "whom the debt, on which said judgment was obtained, had been "duly assigned; and that the said *Calvin Fletcher*, sheriff as a- "foresaid, by virtue of said writ of execution, and in order to levy "the sums contained therein, afterwards, to wit, at *South Hero* "aforesaid, on the 26th day of July, 1823, took a waggon as the "property of the said *Horace*, and having advertised the same "for sale, as the law directs, afterwards, to wit, at *South Hero* a- "foresaid, on the 2d Saturday of Aug. 1823, agreeable to the time "set forth in his said advertisement, sold the same at public ven- "due, for the sum of twenty-two dollars and twenty-five cents, in full "satisfaction of said writ of execution, and officer's fees thereon. And "the said *Calvin* avers that the taking and sale of said waggon, as "aforesaid, is the same supposed *trespass* as set forth in the plain-

X

Grand-Isle, Jan. 1828. } " tiff's declaration, and no other ;  and this
Lampson vs. Fletcher. }  " he is ready to verify :  wherefore, he prays
" judgment if the plaintiff ought to have and maintain his aforesaid
" action thereof against him the defendant,"

"By *Blodget* and *Allen*, his attornies."

" And now the plaintiff, in reply to the plea of the defendant
" above pleaded, pleads and says, that for any thing contained in
" said plea, he ought not to be barred ;  because, he says, that be-
" fore the delivery of the said writ of execution, mentioned in
" said plea of the said defendant, and before any assignment of
" the said debt, contained in said execution from said *Jennison* to
" said *Austin*, the said plaintiff fully paid and satisfied the said
" debt, to wit, the said damages and costs in said execution spe-
" cified ;  and the said *Jennison* thereupon released and dischar-
" ged the said plaintiff therefrom, and directed the said defendant
" not to levy said execution ;  all which, at the time of the levy of
" said execution on the said waggon by the said defendant, was well
" known to the defendant ;  and this the plaintiff is ready to verify ;
" and therefore prays judgment for his damages and costs,

"By *Adams* and *Swift*, his attornies."

" And the said *Calvin Fletcher*, as to the said replication of
" the said *Horace Lampson*, to the aforesaid plea of him the said
" *Fletcher*, says, that the said *Lampson* ought not to have and main-
" tain his aforesaid action thereof against him, because, he says, that
" the aforesaid judgment mentioned in the plea of the said *Calvin*
" above pleaded, on which said execution issued, was rendered
" in an action upon a promissory note given by the said *Horace*
" to the said *Gardner Jennison*, dated November 1, A. D. 1821,
" payable on the 1st day of January, 1823, in good merchantable
" grain to be delivered at the said *Lampson's* dwelling house in
" *South Hero*, which said note the said *Gardner*, afterwards, to
" wit, at *Milton*, in the county of *Chittenden*, on the same 1st
" day of November, 1821, aforesaid, for a valuable consideration,
" to wit, seventeen dollars, paid by *Ethan Austin* of *Milton*, in
" the county of *Chittenden*, to the said *Gardner*, sold, assigned,
" transferred, and delivered over, to the said *Ethan*, said promis-
" sory note, and did then and there endorse the said note with his
" own proper hand and name ;  which said note, from the time of

" said transfer and assignment, became, and {Grand-Isle, Jan. 1828.
" ever since has been, the property of said {Lampson vs. Fletcher.
" *Ethan ;* of which said assignment and transfer, as aforesaid,
" the said *Horace Lampson,* on the 1st day of January, 1823
" aforesaid, and long before any discharge of said note to him
" from the said *Gardner,* was informed by said *Ethan,* and had
" legal notice thereof : and this he is ready to verify ; without
" this, that before any assignment of the said debt, contained in
" said execution from said *Jennison* to said *Ethan,* the plaintiff
" fully paid and satisfied the said debt, to wit, the said damages
" and costs in said execution specified ; the said *Jennison* there-
" upon released and discharged the plaintiff therefrom, and there-
" upon directed the said defendant not to levy the said execution.
" All which, at the time of the levy of said execution on the said
" waggon by the defendant, was well known to the defendant :
" wherefore, he prays judgment, if the said *Horace* ought to have
" and maintain his aforesaid action thereof against him,

" By <em>Blodget</em> and <em>Allen,</em> his attornies."

" And now the plaintiff, in answer to the rejoinder of the defend-
" ant, surrejoins and says, That for any thing contained in his said
" rejoinder, he ought not to be barred from having and maintain-
" ing his said action, because, he says, at the time of the execu-
" tion of the said promissory note by the said plaintiff to said
" *Jennison,* as is set forth in said rejoinder, the said *Jennison* was
" justly indebted to the said plaintiff in a sum of money greater than
" the amount of the said note, to wit, the sum of seventeen dol-
" lars and fifty cents ; and afterwards, and before the rendition
" of said judgment in favor of said *Jennison* against said plaintiff,
" as aforesaid, to wit, on the 24th day of May, 1823, the said
" plaintiff recovered final judgment by the consideration of *Wallis*
" *Mott, Esq.* one of the justices of the peace for the county of
" *Grand Isle,* to wit, at said *South Hero,* for the aforesaid seven-
" teen dollars and fifty cents, as damages, and for two dollars and
" fifty cents costs of suit ; and afterwards, to wit, on the 15th day
" of June 1823, the said judgment in favor of said plaintiff, being
" unpaid, he the said plaintiff and said *Jennison,* by mutual con-
" sent and agreement, offset the aforesaid judgment ; and the said
*Jennison* thereupon discharged and released the said plaintiff from

Grand-Isle, Jan. 1828. ⟩ "the said judgment so obtained by said *Jen-*
Lampson vs. *Fletcher.* ⟨ "*nison*, as aforesaid; of which the said de-
"fendant afterwards, to wit, at *South Hero* aforesaid, on the 17th
"day of June, 1823 aforesaid, and at the time of the delivery of
"the said execution to him as aforesaid, had due notice; and the
"said *Jennison* thereupon directed the said defendant not to pro-
"ceed to levy said execution on the property or body of said
"plaintiff; but to return the same without further proceedings:
"all which the said plaintiff is ready to verify, and therefore prays
"judgment for his damages and costs as above,

"By *Adams* and *Swift* his attornies."

To the foregoing surrejoinder there was a demurrer and join-
der in demurrer. The judgment of the County Court was in
favor of the defendant. And the plaintiff, in his *writ of error,*
assigned the following for *error* :

" 1. The plea, rejoinder, & demurrer, of the said *Calvin Fletch-
er,* and the matters therein contained, are not sufficient in law
"for him the said *Calvin* to have and maintain his aforesaid judg-
"ment against the said *Lampson* for his costs aforesaid.

"2. General Error.

"3. The County Court, in the cause aforesaid, decided that
"the said *Jennison*, plaintiff in the execution aforesaid, in consid-
"eration of a debt against him, in favor of the said *Horace*, de-
"fendant in said execution, which existed between them prior to
"the transfer of said note from said *Jennison* to said *Austin*, on
"which said judgment and execution was obtained, could not dis-
"charge said execution ; and that the said *Jennison's* discharge, as
"aforesaid, in consideration aforesaid, was not sufficient in law to
"discharge the said *Horace* from said execution, or the damages
"and costs therein contained ; and

"4. in substance, that the action of tresspass would not lie a-
"gainst the defendant, sheriff as aforesaid, for proceeding with the
"execution after it was discharged by said *Jennison*, plaintiff in
"said execution.

*Swift*, for the plaintiff in error contended, 1. That a court of law
can not protect the assignment of *choses in action*, except in those
cases where by law the right of action is assignable. The asignee.

In such cases, must depend upon the credit and honesty of the assignor.—*Bray. R.* 55.

2. But if the law is otherwise, still a court of law will only protect such assignment against the fraud of the promiser, and will permit him to make any equitable offset.

3. A sheriff having an execution to serve is bound to obey the directions of the creditor in the execution, as respects the proceedings on the execution, and cannot judge between him and one who pretends to have the equitable interest, although he may not be justified in paying him the money ; otherwise the sheriff would be placed in a hazardous situation.

4. If a sheriff proceed to levy an execution after the return-day, or a satisfaction, he is a trespasser : he is even bound to discharge from imprisonment after satisfaction, or he becomes a trespasser.—*Cro. Jac.* 379.—*Esp. N. P.* 332-3.—1 *Sw. Dig.* 500, 795.—4 *Johns.* 450.

5. In the plea in bar, in order to a justification, the defendant ought to set forth the proceedings in the levy, to wit, the advertisement and sale of the property, that the court may judge of the legality of the proceedings ; it is not sufficient for him to state he has proceeded according to law.

6. An equitable offset of a debt existing before the transfer of a *chose in action*, although made after notice of a transfer, is no fraud upon the assignee.

7. A sheriff cannot jusify under the process of an inferior court without a return of such process.—1 *Sw. Dig.* 499.—1 *Wilson* 17.—2 *Roll*, 562.—2 *Strange* 1184.—*Cro. Car.* 259.

*Allen*, for the defendant in error. In this case three questions are to be considered.

1. Will the court protect the equitable interest of an assignee ?

2. Is the Judgment, obtained by *Lampson* against *Jennison*, such a claim, as can be set off by mutual agreement between them, after notice of the assignment ? and ought not *Lampson* to have pleaded it in offset to the action brought by *Austin* in *Jennison's* name against him ?

3. Will an action in this case lie against the sheriff ?

1. That the court will protect the equitable interest of an assignee, is now no longer a question. The doctrine is supported

Grand-Isle, Jan. 1828.  
Lampson, vs. Fletcher.

by abundance of authorities, and recognized by our courts.—*See* 1 *Dane*, 283, and the following pages, where all the cases are collected.

2. Subsequent to notice of the assignment, no contract could be made between *Jennison* and *Lampson*. Whatever legal defence *Lampson* had, he must have availed himself of it before a court of justice. To admit that *Jennison* could make any contract with *Lampson*, relative to the payment or discharge of the execution, would be to surrender the doctrine, that the court would protect the assignee against the doings of the assignor. The principle of protection arises out of the fact, that the assignor may be guilty of a fraud ; and the court will see that he shall not profit by it. But allowing him to make a contract relative to it, or to give a discharge, which upon the face of it shall be binding, puts it out of the power of the court to protect the assignee. It was in the power of *Lampson* and *Jennison* to make up such a suit, and obtain such a judgment, as they chose, and according to the doctrine contended for, might affect *Austin's* interest, without any notice to him, or giving him an opportunity to defend. *Austin*, the assignee, if the judgment is to affect his interest, ought to have had the privilege of defending, instead of *Jennison ;* and the want of that opportunity would be a good reason even against the judgment being pleaded in offset to the action of *Jennison* against *Lampson*, and a better reason against the validity of a receipt given by *Jennison* to him. This clearly shows the propriety of the position, that whatever advantage the defendant means to take by way of defence to a demand assigned, must be had either by contract with the assignees, or by application to a court of justice. It is decided, that when A assigns a bond to B, and B gets judgment in A's name, and gives the execution to an officer, and informs him of his equitable interest, and the officer suffers an escape,—B may recover against him in A's name, and his release will not protect the officer.—1 *Dane*, 289, s. 21.—15 *Johns*. 405.

3. But no action against the sheriff can be maintained. The officer being commanded by judicial authority to proceed, is not obliged to stop, until he has levied the debt, or is superceded by authority as high as that by which he was commanded. Taking

into consideration the facts attending this { Grand Isle, Jan. 1828.
case, the absurdity will be very manifest of } *Lampson* vs. *Fletcher*.
making the officer liable for not obeying the direction of *Jennison*,
whether verbal or written.    If a receipt or discharge were given
by *Jennison* to *Lampson*, how was the officer to know that it was
genuine ?    He could not know but that it was a forgery.    He
might exercise his judgment, but might be mistaken.    He ought
not to be made the judge at his peril.,    If verbal directions were
given him by *Jennison*, he ought not to be bound to obey them.
Upon the back of the execution, information was given to the
sheriff, that the debt belonged to *Ethan Austin*, and he was forbid
receiving any discharge from *Jennison :* and unless the officer
could make out, that the certificate was incorrect, he would be
liable to *Austin*.—(See 1 *Dane* 289, where the nominal Plaintiff's
discharge would not protect the officer, as it necessarily follows
from the doctrine so well established, that the interest of the as-
signee shall be protected.)    How is the officer to find out, that
this notice is not correct?    If it is in conformity to the truth, he is
bound to regard it.    If not, we do not believe it is. a doctrine for
him to examine into.    If we are correct in this position, no action
will lie against the defendant for not obeying *Jennison's* direction.
If his discharge was good, *Lampson* could have staid the execution
by writ of *audita querela*.    The right both of the assignee and the
maker of the note, could then have been tried ;  and if the execu-
tion had been fairly settled, having regard to the rights of the as-
signee as well as the maker, the court could order the execution
staid.—2 *Doug.* 674, *Tarlton* vs. *Fisher*.

The plaintiff further contends, that the defendant cannot main-
tain his defence, because, it does not appear from the plea in bar,
that he advertised for the sale of the property, before he disposed
of it ; and quotes the case of *Pennington* vs. *Loring*, 7 *Mass.*
388 : but that case does not support him.    It appears in that case
that the officer made his return—that he advertised and sold with-
in twenty four hours ;—whereas he ought not to have sold short of
forty-eight.    But in the present case, it does not appear but that
the property was advertised a sufficient length of time before sale.
The plea does state the advertisement, and says the officer sold
the property at public vendue, giving the day of the advertisement

Grand-Isle, Jan. 1828.

Lampson vs. Fletcher.

and day of sale, between which there is an interval of more than fourteen days.

The plaintiff says the defendant is a trespasser, because he does not allege in his plea, that he returned his execution; and quotes *Sw. Dig.* 499. The execution bears date, 31st May 1823,— and the property was taken 26th July following, not leaving a sufficient time to sell in the life of the execution. It is contended, that if the officer begin his levy in the life of the execution, he may complete it afterwards.—3 *Dane*, 80, *s.* 11.—6 *Mass.* 20, *Prescott* vs. *Wright.* "If the execution be duly done, it is good, though " not returned."—3 *Dane*, 91 *s.* 1, *et seq.* where a number of cases are cited.

HUTCHINSON, J. delivered the opinion of the court. The court are equally disposed to protect the *bona fide* assignee of a note in his right of action, if any such right exists upon the note, and the rights of the signer of the note to make any defence that exists before he has notice of the assignment; but we think each must attend to his rights in proper season, and not by letting the proper season go by neglected, so pursue his rights afterwards as unnecessarily to embarrass the rights of the other party, and more especially the rights of a public officer. In this case, when the note was sued, the defendant, *Lampson*, ought to have made his defence, whether it were an offset or discharge from *Jennison*, before judgment against him. The suit was then under the care of *Austin*, the assignee, and he would have had opportunity to meet this defence and show it unjust, if he could. But *Lampson*, instead of thus preferring his defence where *Austin* could know and meet it, takes his judgment in his action against *Jennison*, of which action *Austin* was probably ignorant, if not, he had no right to appear in it; and while *Austin's* execution is in the hands of the sheriff, he procures a discharge from *Jennison*, by offsetting judgments, and shows this discharge to the sheriff, and forbids his proceeding with the execution, while *Austin*, whose ownership was known to *Lampson* long before his suit upon the note, asserts his right to control the execution and directs the sheriff to proceed. He follows the direction of *Austin*, levies upon a waggon of *Lampson*, for which he brought his action of *trespass*.

Under these circumstances, the sheriff did { Grand Isle, Jan. 1828. right in obeying *Austin.*  *Lampson* had neg- } *Lampson* vs. *Fletcher.* lected his defence  till the note had  passed into  a judgment, which warranted the execution, which was *prima facie* a good authority to take the waggon.    *Lampson* had no right to stop the course of this execution by a discharge merely from *Jennison,* who, as *Lampson* knew, had conveyed the note to *Austin.*    If he would stop the progress of the execution in this stage of it, he must resort to his *audita querela* in which the merits of his claim may be tried, and his bonds to prosecute will keep good and safe the rights of *Austin* while the matter is in litigation.

In the course taken by *Lampson, Fletcher* must either obey or disobey a regular and legal execution at the peril of deciding correctly a  dispute between *Austin* and *Lampson* about the defence which  *Lampson* had, but did not make, to  the note assigned to *Austin.*    If he decided this point wrong and obeyed the  process, *Lampson* treats him as a trespasser.    If he decided the same point wrong and  disobeyed the  process, *Austin* has  his action  in the name of *Jennison* for such neglect.

It will not do to sanction a course  which necessarily places a sheriff in such a dilemma.    When a discharge is shown to a sheriff from the  person who is the owner of  the  debt, and the sheriff knows him to be the  owner, and has no doubt about the fairness of the discharge,  if the  sheriff should proceed with the execution regardless of such discharge, he  would  probably  be  considered a trespasser.    But he must not be so considered in the present case. He was not obliged to take the responsibility of disobeying both the directions of *Austin,* who gave him the execution, and the precept of the execution itself.  *See* 2 *Con. R.* 700, *Luddington* vs. *Peck.* The judgment, therefore, of the County Court, which was in favor of the sheriff, is affirmed with additional cost.

*Hector Adams,* and *Swift,* for plaintiff in error.

*Blodget* and *Allen,* for defendant in error.