W. H. PRESTON, assignee, *vs.* RUSSELL, FOLLENSBY & Co.

October Term, 1898.

Present: Ross, C. J., TAFT, ROWELL, TYLER, START and THOMPSON, JJ.

Opinion filed January 12, 1899.

*Insolvency—Preference—Equitable Assignment.*—The plaintiff assignee seeks to recover under V. S. 2141 certain payments made by his insolvent to the defendants. The defendants, who were lumber merchants, furnished the insolvent, who was a builder, with lumber to be used in erecting a house for Brooks Brothers under an arrangement with the insolvent that he should give them orders on Brooks Brothers for their pay. Brooks Brothers were notified and promised to pay the order if and so far as they might be owing the insolvent when the orders should be given. The arrangement was concluded more than four months before the petition was filed. The lumber having been furnished, the orders were accordingly given and paid within the four months, with full knowledge of insolvency, and, as the court found, for the purpose of giving and receiving a preference and in fraud of the laws relating to insolvency. *Held,* that the arrangement amounted to a valid and enforcible assignment of the fund to be created by the lumber of the defendants and the labor of

the insolvent, that the giving and paying of the orders were merely in fulfillment of the obligation, and related back to it, and did not constitute a preference.

ASSUMPSIT.    Trial by court, at the June term, 1898, Caledonia County, *Munson*, J., presiding.    Judgment for the plaintiff for $900.00 with interest from May 1, 1895.    The defendants excepted.

The finding of the court upon the subject of the arrangement between the insolvent, the defendants and Brooks Brothers, relating to the furnishing of the lumber and the giving and payment of orders, is in the following language: "In the fall of 1894, as early as November 1st, Lachance took a contract to furnish the material and build a house for Brooks Brothers to cost about $3500, and told the defendants of his taking the contract and that he should want some lumber; and the defendants, believing that his financial condition was becoming worse, decided not to go on in the old way; and Follensby, by direction of the firm, saw Lachance and told him they would be glad to furnish him the lumber, but they should want him to give orders on Brooks Brothers instead of notes, and Lachance replied that he would rather do that than give notes, and Follensby said he would see the Brooks Brothers about it; and Follensby then saw Jonas Brooks, one of the brothers, and inquired whether any orders Lachance gave them on Brooks Brothers would be taken care of, and Brooks replied that if they were owing Lachance the amount of the order they would make them good; after which, and before the delivery of the lumber, Follensby saw Lachance and told him what Brooks had said."

*Bates, May & Simonds* for the defendants.

*W. P. Stafford* and *Harry Blodgett* for the plaintiff.

Ross, C. J.    The plaintiff, assignee of the insolvent's estate, seeks to recover $900 paid by the insolvent within four months before filing the petition to have him adjudged to be

an insolvent, to the defendants, under the following circumstances. The insolvent was a carpenter, and builder and the defendants were manufacturers and dealers in lumber. He had purchased the lumber for his building operations, for some time, of the defendants. In the fall of 1894, the insolvent was indebted to the defendants for lumber furnished, was, in fact, insolvent, and was believed to be insolvent by the defendants. Previously to this time, the defendants had sold him lumber, from time to time, as needed by him in execution of his building contracts, and taken notes from him payable at a bank of which one of the defendants was a director. These notes were sometimes paid when due, but often had to be renewed. In the fall of 1894, this director believed that the insolvent was in failing circumstances, and objected to giving him farther credit. The insolvent then took a contract to build a house for Brooks Brothers, to cost about $3500. Brooks Brothers were responsible financially. The insolvent applied to the defendants to furnish him with lumber for this house. The parties had negotiations, which resulted in the defendants agreeing to furnish the insolvent the lumber necessary to build the house, to be paid for by Brooks Brothers on orders, given by the insolvent, which orders Brooks Brothers agreed to honor so far as they should be owing the insolvent on the contract at the time the orders should be given. This agreement was concluded in November, 1894, more than four months before the insolvency petition was filed. Within the following four months, but the exact dates are not found, the defendants furnished the insolvent about $1000 worth of lumber for the house, and the same was paid for agreeably to the agreement of the parties, by Brooks Brothers, on two orders given the defendants by the insolvent. One order was for $500, drawn and paid the first of January, 1895, and the other for $400, drawn and paid the last of February, 1895.

The contention is, whether, under the insolvent law in

regard to payments made in fraud of it, the assignee is entitled to recover this amount from the defendants. The section of the statute relating to this subject is 2141, which reads: "If a person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to a creditor or a person having a claim against him, or who is under a liability for him . . . . . makes a payment . . . . . either directly or indirectly, absolutely or conditionally, the person receiving such payment . . . . . having reasonable cause to believe such person insolvent, or in contemplation of insolvency, and that such payment . . . . . is made in fraud of the law relating to insolvency, the same shall be held void, and the assignee may recover the property, or value thereof, from the person so receiving or to be benefited thereby." It is observable that this section does not prohibit all dealing with a person known to be insolvent, or in contemplation of insolvency, nor does it prohibit receiving payments from him. It does prohibit all such dealings, or receipt of payments, as are made in fraud of the laws relating to insolvency. The controlling principle of such laws is, to secure a ratable distribution of the insolvent's property among his then existing creditors. Payment of a fully secured debt, on surrender of the security, is not prohibited, nor a sale of the insolvent's property with or without payment therefor; nor a fair exchange of property by him; nor a borrowing of money and giving security therefor; nor any fair dealing by the insolvent with his property, unless it operates to defeat a ratable distribution of his property among his then existing creditors. *Morey* v. *Milliken*, 86 Me. 481; *Williams* v. *Coggeshall*, 11 Cush. 442; *Tiffany* v. *Boatman's Institution*, 18 Wallace 375; *Dalrymple* v. *Hillenbrand*, 62 N. Y. 5; *Ex parte Ames in re McKay and Aldus*, 7 Nat. B. R. 564; *Bush* v. *Boutelle*, 156 Mass. 167: 32 Am. St. 442 and note; *Stevens* v. *Blanchard*, 3 Cush. 169. Many more like

decisions could be added. On these principles, when this agreement was entered into, the defendants could have sold the insolvent lumber for the house, and the insolvent could have gone to Brooks Brothers and have gotten the money, and have paid for such lumber when and as delivered, because such transactions would not have been in fraud of the laws relating to insolvency. It would have been no more than an exchange of lumber delivered by the defendants, to create a fund in Brooks Brothers' hands, for money taken from the fund so created. Was the agreement made and carried into execution any more than this? The defendants, when applied to to furnish the lumber to enable the insolvent to erect the house, refused to let him have it on his own credit. They proposed that it should be paid for, on orders, by Brooks Brothers for the erection of whose house the lumber was to be furnished. This the insolvent assented to, and thereby agreed that the lumber so furnished should be paid for from the fund to be thereby created in Brooks Brothers' hands. He was not bound to pay for it in any other manner, if he tendered payment in this manner, nor could the defendants, on such tender being made, have enforced payment in any other manner. By the agreement the insolvent not only bound himself to give such orders, but impliedly agreed there should be funds in Brooks Brothers' hands to answer them. Otherwise such orders would not operate as payments for the lumber. Nor was this the whole of the agreement. Brooks Brothers became party to it and became bound to make the payments, if the orders were given and funds remained in their hands.

If therefore the defendants and the insolvent performed their respective parts of the agreement, Brooks Brothers became obligated to make the payments which they did make to these defendants. The defendants and insolvent, respectively, performed their parts of the agreement, and thereby Brooks Brothers became obligated to make the payments sought to be recovered, and such payments were

made by Brooks Brothers in discharge of their obligation, and received by the defendant as coming from Brooks Brothers under the agreement. Under it the defendant's lumber, through the insolvent, as an intermediate party, was to, and did, go into the erection of the house for Brooks Brothers and thereby create a fund in their hands out of which Brooks Brothers were to and did pay the defendants in discharge of the obligation of themselves and of the insolvent. By the agreement, none of the insolvent's property then in existence was to be used to pay for the defendants' lumber, nor does it appear that the insolvent contracted a debt, proved or provable against his estate, in the erection of the house. The sale of this lumbêr was not on the credit of the insolvent, but on the credit of Brooks Brothers, who were known to the defendants to be financially responsible. It is found, "the lumber would not have been delivered but for the arrangement stated." Hence, on the facts found, the payments sought to be recovered were made by Brooks Brothers in discharge of the obligation assumed by them when the contract for the purchase of the lumber was entered into. This was more than four months before the insolvency proceedings were commenced, and the contract was not in fraud of the laws relating to insolvency. It did not, and could not, reduce the insolvent's then means available for the payment of his then existing debts, but, if successful, might add thereto, at least to the extent the insolvent's personal labor and skill entered into the erection of the house. Such contract, although not in writing, was good between the parties—*Noyes* v. *Brown*, et al. 33 Vt. 431—and operated, at its date, to assign equitably, at least, to the defendants, so much of the contract price for the erection of the house as might be required to pay for the lumber. *Blin* v. *Pierce*, 20 Vt. 25. Equity regards and treats that as done which in good conscience ought to be done. 1 Pomeroy's Eq. Jur. § 364. In *Blin* v. *Pierce*, it is held that a debt equitably assigned, in good faith, more

than four months before the commencement of proceedings in bankruptcy, is protected to the assignee against such proceedings. Under that decision, if the debt from Brooks Brothers had been due absolutely, the agreement between these parties would have been a valid assignment, at law, of so much of the contract price as should be required to pay the defendants. The agreement operated to make the equitable assignment, and not the orders subsequently given by the insolvent. The lumber was sold and delivered on the strength of the agreement. The fund, potentially existing, by reason of the agreement, in Brooks Brothers' hands, so far as necessary, was appropriated to payment for the lumber. The orders were required to make certain the sum so appropriated. When the contract was made, the sum required to pay for the necessary lumber was not ascertained and could not well be except as the work on the house progressed. No particular form of words is necessary to make an equitable assignment. The intention of the parties to the agreement, gathered from the language used, read in the light of existing circumstances, controls, as in all agreements. Many cases and works of elementary writers might be cited illustrative of the doctrine of equitable assignments. The general principles governing such assignments are well expressed by *Green*, V. C., in the opinion in *Bank* v. *Bayonne*, 48 N. J. Eq. 246, found in a note to *McDaniels* v. *Maxwell*, 28 Am. St. 745. He says:—

"It is settled that an assignment, for a valuable consideration, of a sum of money due or to grow due on the performance of an existing contract, will, on notice thereof being given to the debtor, operate at once, or when the fund is created, as an equitable assignment of so much of the fund as is covered thereby, subject to all valid prior charges. *Superintendent of Schools* v. *Heath*, 15 N. J. Eq. 22; *Shannon* v. *Mayor*, 37 N. J. Eq. 123; *Kirtland* v. *Moore*, 40 N. J. Eq. 106; *Brokaw* v. *Brokaw*, 41 N. J. Eq. 304; *Lauer* v. *Dunn*, 115 N. Y. 405; 3 Pomeroy's Eq. Jur. § 1280. While,

properly speaking, an assignment cannot be made of a subject which does not exist, such as a fund to become due on the future performance of a subsisting contract, yet equity, on the possible debt ripening into an enforceable specific money liability, treats the agreement as an assignment, *pro tanto,* of the fund, and by force thereof vests the equitable title to the money in the assignee. *Field* v. *Mayor* 6 N. Y. 179: 57 Am. Dec. 435 and note; *Hall* v. *Buffalo,* 1 Keyes 193; *Brill* v. *Tuttle,* 81 N. Y. 454, 457: 37 Am. Rep. 515; *Brown* v. *Dunn,* 50 N. J. L. 111, 113; 3 Pomeroy's Eq. Jur. §§ 1280, 1283, note 2. To impound the amount in the hands of the debtor, notice of the assignment must be given to him; but no particular form of notice is required. Any writing or act which clearly indicates that the assignor intends to make over the fund belonging to him amounts in equity to an assignment of the fund. *Bower* v. *Hadden Blue Stone Co.,* 30 N. J. Eq. 171; *Lyon* v. *Bower,* 30 N. J. Eq. 340; *Shannon* v. *Mayor,* 37 N. J. Eq. 123. On notice being given to the debtor, and the sums being earned under the contract, the debtor becomes trustee, or *quasi* trustee, for the assignee, as to the amount assigned, subject to existing equities and valid prior charges thereon. *Hall* v. *Buffalo,* 1 Keyes 193. From this it follows that neither payment to, nor a release or discharge by, the assignor, after notice of the assignment, can affect the rights of the assignee against the debtor. *Jones* v. *Farrell,* 1 De G. & T. 208; *Brill* v. *Tuttle,* 81 N. Y. 454: 37 Am. Rep. 515; *Field* v. *Mayor,* 6 N. Y. 179: 57 Am. Dec. 435; *North Bergen* v. *Eager,* 41 N. J. L. 184; 2 Pomeroy's Eq. Jur. § 704. It is evident from this statement of the incidents of an equitable assignment, that acceptance by the debtor of the order or assignment is not, in equity, necessary to the validity as a transfer, *pro tanto,* of a fund in his hands. It takes effect from the acts of the assignor and assignee, and the debtor, so far as the right to the fund is concerned, is but the instrument through whom the transfer

is to be actually made.   The debtor's acceptance or promise gives the assignee an action of law against him, not on the assignment, but on the promise; in equity it neither creates, increases, or diminishes his ½liability to the assignee.   3 Pomeroy's Eq. Jur. § 1280 and note 1."

On these principles, as the lumber was delivered from time to time under the contract, not only was the fund in Brooks Brothers' hand increased to the extent of its value, but to that extent the fund became thereupon equitably the property of the defendants, and never the property of the insolvent.   If the insolvent had refused or neglected to give the orders, equity would have seized so much of the fund in Brooks Brothers' hands as had thus been appropriated to payment for the lumber, and applied it to that end, without the orders.   The defendants, also, at law, could have enforced payment, on the promise of Brooks Brothers. While the doctrine of equitable assignment has not been so fully stated in any of our decided cases, so far as I am aware, it has been frequently applied, and always in harmony with the doctrine stated.   *Claflin* v. *Kimball*, 52 Vt. 6; *Hutchins* v. *Watts*, 35 Vt. 360; *Webster* v. *Moranville*, 30 Vt. 701; *Downer* v. *Marsh*, 28 Vt. 558; *Thayer* v. *Kelley*, 28 Vt. 19; *Spafford* v. *Page*, 15 Vt. 490; *Upton* v. *Moore*, 44 Vt. 552; *Bank* v. *Post*, 65 Vt. 222; *Trow* v. *Braley*, 56 Vt. 560; *Wescott* v. *Potter*, 40 Vt. 271; *Strong* v. *Strong*, 2 Aik. 373; *Lampson* v. *Fletcher*, 1 Vt. 168.   See also, Subject, Assignments, 2 Am. & Eng. Ency. of Law (2d ed.) pp. 1017, 1026, 1031, 1055, 1056, 1060.

> *Judgment reversed, and judgment for defendants to recover their costs.*