COON RIVER CO-OPERATIVE SAND ASSN. et al., Appellees; CONSOLI-DATED INDEMNITY & INSURANCE CO., Appellant, v. MCDOUGALL CONSTRUCTION CO. et al., Appellees.

No. 41610.

OCTOBER 19, 1932.

REHEARING DENIED FEBRUARY 16, 1933.

Parrish, Cohen, Guthrie & Watters, for Consolidated Indemnity & Insurance Co., appellant.

Carr, Cox, Evans & Riley, by John Inghram, for Coon River Co-operative Sand Assn., F. Kann, O. Kellner, and Commercial Credit Co., appellees.

Lewis & Lewis and Stipp, Perry, Bannister & Starzinger, for First Trust & Sav. Bank of Moville, appellee.

J. C. Pryor, for C., B. & Q. R. Co., appellee.

L. A. Philpot, for C. D. Allemang, Fred Drenkhan, Standard Oil Co. (Indiana), K. W. Carlisle, and A. Weber, appellees.

Spence & Beard and Grant L. Hayes, for Mt. Ayr Service Station, S. W. Holland, A. F. Holland, Butler Market, Jennie C. Butler, Carr Chevrolet Co., Miller's Cafe, Johnston Auto Co., E. E. Edwards, and E. F. Bowman, appellees.

Maxwell A. O'Brien, for Iowa State Highway Commission, appellee.

Lehmann, Hurlburt & Hossfeld, for General Tire Co., appellee.

ALBERT, J.—Two cases were originally filed in equity which were later consolidated, resulting in an action under Chapter 452, Code 1931, to determine the rights of the respective parties involved. On the 6th day of January, 1931, the McDougall Construction Company was awarded a contract by the State Highway Commission for the improvement by graveling of Project 613, Ringgold county, Iowa. On the same day the Construction Company made application to the Consolidated Indemnity & Insurance Company for the

execution of a statutory bond to accompany said contract, and such bond was executed and filed with the Iowa State Highway Commission. The contract price for the construction of the project was $44,986.92.

On May 14, 1931, the McDougall Construction Company executed and delivered to the First Trust & Savings Bank of Moville, Iowa, a written assignment which will be later set out.

On June 12, 1931, the McDougall Construction Company filed a notice of abandonment of the project with the Iowa State Highway Commission. The Insurance Company then completed the work at an expense of $5,764.17. Many additional lienable claims have been filed against the project in the sum of $28,843.95, making a total liability on the part of the Insurance Company of $34,608.12, less any amount of the moneys in the hands of the Iowa State Highway Commission which may be allocated to the payment of these claims. There is $26,630.04 in the hands of the Highway Commission, being the balance due on this contract, which amount includes a warrant of $7,940.70 which, prior to the abandonment of the contract on June 8, 1931, was issued by the state auditor of the State of Iowa and delivered to the First Trust & Savings Bank of Moville. On presentation of the same to the treasurer of the state, payment was refused because of the fact that the contractor had abandoned its contract prior to the time the same was presented to the state treasurer for payment.

Ten Thousand Dollars was loaned by the Moville Bank to the Construction Company on the Ringgold county project, and $17,749.79 was paid to the bank under its assignment from the proceeds of the project.

When the McDougall Construction Company made application to the Insurance Company for the bond in question, as a part of such application was the following provision:

"That in further consideration of the execution of said bond, the undersigned hereby assigns, transfers and conveys to the Company all the deferred payments and retained percentages, and any .and all moneys and properties that may be due and payable to the undersigned at the time of any breach or default in said contract, or that may thereafter become due and payable to the undersigned on account of the said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that such

money, and the proceeds of such payments and properties shall be the sole property of the Company, and to be by it credited upon any loss, cost, damage, charge and expense sustained or incurred by it under said bond."

This bore date January 6, 1931.

The assignment by the Construction Company to the Moville bank read as follows:

"That we McDougall Construction Co., in consideration of the sum of one dollar and other good and valuable consideration in hand paid, the receipt whereof is hereby acknowledged, do hereby sell, assign, transfer and set over to First Trust & Savings Bank of Moville, Iowa, all moneys due or to which we may be now or hereafter entitled on account of work on Project No. 613 Ringgold County, Iowa, under and by virtue of a certain contract entered into between the said McDougall Construction Co., and Iowa State Highway Commission of Ames, Iowa, under date of January 6, 1931, also hereby assigning and transferring all estimates now on file or hereafter allowed on account of work done under said contract and authorize and direct all payments of moneys due or hereafter becoming due on account of said work to be paid to said First Trust & Savings Bank of Moville, Iowa. Dated this 14th day of May, 1931."

This assignment was duly acknowledged before a notary public, and was filed with the Iowa State Highway Commission on the 16th day of May, 1931. The assignment to the Bonding Company, above set out, was filed with the Iowa State Highway Commission on the 12th day of June, 1931. It appears, therefore, that while the assignment to the Bonding Company was first in time, the assignment to the Moville Bank was first in time of filing with the Highway Commission.

The district court held that the rights of the bank, under its assignment, were superior to the rights of the Bonding Company under its assignment. This is the first question raised on this appeal. Reliance is largely, if not wholly, based upon the case of Ottumwa Boiler Works v. O'Meara & Son, 206 Iowa 577. In that case we announced the rule as follows:

"We hold at this point, that the appellant, being in fact the first assignee, was entitled to priority over the bank, the second

assignee, although the latter first gave notice of its assignment to the county official."

The question to be determined is whether or not this rule should be applied to the case under consideration. In the O'Meara case, the first assignment in time was on April 29, 1922, in which the contractors assigned to the Southern Surety Company all sums due or to become due the said O'Meara & Son under said contract. It will be noticed that this is an unconditional assignment. The second assignment was to a bank at Bloomfield, and assigned "any sums hereafter due me from said contracts, until you have paid the National Bank of Bloomfield all indebtedness due from me to said bank." It will be noted also that this is an unconditional assignment. Therefore the court held, as it did, that the giving of notice of such assignment was not material, and the assignment to the Surety Company being the first in time, it had priority. The question is whether the facts in this case call for an application of the rule in the *O'Meara* case. .

It will be noted that the assignment to the Bank of Moville is wholly unconditional. It says: "Do hereby sell, assign, transfer and set over to the First Trust & Savings Bank of Moville, Iowa, all moneys due or to which we may be now or hereafter entitled on account of * * * contract entered into between the said McDougall Construction Company and the Iowa State Highway Commission, also hereby assigning and transferring all estimates now on file or hereafter allowed on account of work done under said contract," etc.; while the contract between the Construction Company and the Bonding Company provides: "The undersigned hereby assigns, transfers, and conveys to the Company *all the deferred payments and retained percentages* and any and all moneys and properties that may be due and payable *to the undersigned* at the time of any breach or default in said contract, or that thereafter may become due and payable to the undersigned on account of said contract," etc.

Whether or not the O'Meara case is controlling depends upon the construction to be placed on the portion of the contract between the Construction Company and the Indemnity Company above quoted. It is apparent from a reading of the same: (1) That all deferred payments and retained percentages are assigned to the Indemnity Company; also (2) all moneys * * * that may become due and payable to the undersigned *at the time of breach or default*

*in said contract;* and also (3) all moneys which may become due and payable after the default of said contract. The dispute at this point, stated concisely, is, which of these two assignees is entitled to the $7,940.70 which was represented by the warrant heretofore referred to.

The record shows that this warrant was regularly issued on proper estimates for work completed prior to June 8, 1931, and the warrant bore date June 11, 1931. It therefore represented money due the Construction Company on that date, and was money due and payable to the Construction Company at the time of the breach and default in said contract, and comes within the terms of the assignment to the Indemnity Company as heretofore set.out. But the right of the Indemnity Company, under its assignment, did not attach to the same until the contract was abandoned on the 12th day of June, 1931, and it follows, therefore as a necessary consequence, that the right of the bank to said funds entitled it to claim said funds under its assignment which was of date of May 14th prior. In other words, the assignment to the bank being absolute, had attached and was operative against said funds before the assignment to the Bonding Company became effective.

In the case of Globe Indemnity Co. v. West Texas Lumber Co., 34 S. W. (2d Ser.) 896, the Texas court had before it an assignment substantially the same as that of the Bonding Company in the instant case, and the fact situation as to a subsequent assignment to the bank was the same as in the instant case. With reference to such assignment the court said:

"* * * still it was merely a conditional assignment, conditioned upon some future breach of the contract by the contractor, and its effective date was postponed until the happening of the event which would make it absolute. * * * This left the contractor free to assign the contract price of the building and the lien securing same to any person he might see fit, and such assignment, whether legal or equitable, before the happening of the event which would make surety's assignment absolute, should be given priority, under the rule that it was in fact first created or executed."

As also tending to sustain our conclusion see Fidelity & Deposit Company of Maryland v. City of Auburn, 272 Pac. (Wash.) 34.

It is our conclusion, therefore, that the district court was right in holding the bank's assignment was entitled to priority.

II. The district court allowed three claims and error is predicated as to the allowance of such claims, to wit: E. A. Butler, $78.37; S. W. Holland, $335.65; J. S. Miller of the Miller Cafe, $291.43. Assault is made on the court's action in allowing these claims on the ground that they are not lienable claims under Chapter 452, Code 1931. The Holland claim constituted a charge for meals furnished various drivers employed by the McDougall Construction Company, and the sum of $7.55 for telephone calls made by McDougall's superintendent. The latter item was denied by the lower court, but the claim for meals was allowed. Holland operated a cafe where these meals were furnished.

Under subsection 4 of section 10299, Code 1931, we find this:

" 'Material' shall, in addition to its ordinary meaning, embrace feed, gasoline, kerosene, lubricating oils and greases, provisions, and fuel, but shall not include personal expenses or personal purchases of employees for their individual use."

We held in Monona County v. O'Connor, 205 Iowa 1119, that the word "materials" does not embrace any claim or lien for groceries, board, feed, hay, pasture, or rental of equipment used by the principal contractor. Subsequent to that decision, several amendments have been made to the statute from time to time, making it read as above set out. We have indicated that the policy of this court is to construe such statutes strictly rather than liberally. Aetna Casualty & Surety Co. v. Kimball, 206 Iowa 1251; Monona County v. O'Connor, supra; Rainbo Oil Co. v. McCarthy Improvement Co., 212 Iowa 1186.

As to this claim, therefore, the question is narrowed down to whether or not the meals furnished to the various drivers and employees of the McDougall Company, in connection with the work on this improvement, come within the provisions of the statute above set out. Our conclusion is that under the rule of strict construction, they do not come within the statute, and the claim was not a lienable claim.

The claim of J. S. Miller was for $291.43 for meals furnished truck drivers employed by the McDougall Construction Company. What we have just said with reference to the Holland claim governs the Miller claim.

The Butler claim differs and is wholly excluded by the wording of the statute. This was a claim for meats and groceries pur-

chased by an employee for himself and his family, and the court erred in allowing this claim as a lienable claim.

It follows, therefore, that the action of the district court in holding that, as between the assignees the bank's claim was superior, is affirmed.

In so far as the court allowed these three claims above specified as lienable claims against said funds, each of such allowances was erroneous, and its action in relation thereto is reversed.—Affirmed in part, reversed in part.

STEVENS, C. J., and FAVILLE, DE GRAFF, and WAGNER, JJ., concur.