# First Vermont Bank and Trust Company v. Village of Poultney and Maine Bonding Company

[349 A.2d 722]

No. 65-75

Present: Barney, C.J., Smith, Daley, Larrow, and Billings, JJ.

Opinion Filed December 2, 1975

*J. Fred Carbine, Jr.*, Rutland, for Plaintiff.

*Dick, Hackel & Hull*, Rutland, for Maine Bonding Company.

*Williams, Williams & Seaver*, P.C., Poultney for Village of Poultney.

**Daley, J.** The plaintiff, First Vermont Bank and Trust Company, brought suit against defendants Maine Bonding and Casualty Company and the Village of Poultney in the Rutland Superior Court seeking to recover monies which it had loaned to a construction company in consideration of an assignment of any and all monies due it from the Village of Poultney. The cause was tried without a jury. Findings of fact were made and filed. Upon the facts found by the court, judgment was entered for both defendants. The plaintiff appeals.

The following facts are reflected by the record and are not contested by the parties. On April 13, 1970, the defendant Village of Poultney contracted with one Roe-Del Enterprises, Inc., a construction company, to build an interceptor-sewer system. Pursuant to this contract a percentage of the total contract price was to be retained by Poultney, "at least five per cent (5%) of the original contract amount [to be held] . . . for a period of one year from date of final acceptance of the work. . . ." This "retainage" account was to serve as security for the correction of any inadequate or defective work within the one-year period.

On June 3, 1971, as security for a loan made to assist Roe-Del in the completion of the contract, the plaintiff took an assignment. The assignment was of all monies due or to become due to Roe-Del from Poultney under the contract. At the time of this loan and assignment no sums were legally due or owing to Roe-Del; the bank was aware that Roe-Del had a performance bond and a labor and materials bond written by defendant Maine Bonding and had copies of the application

for the bond and the "performance" bond itself (a term used throughout the trial to include the labor and materials bond as well as the performance bond, and incorporated in the court's findings). Under the terms and conditions of the application and the bond, Roe-Del assigned to the bonding company all sums due under the contract in the event of any claim or default in connection with the performance of the contract.

In accordance with the contract between Roe-Del and Poultney, the bonding company was required to make payments for labor charges incurred by Roe-Del and for materials supplied in connection with the performance of the contract, which exceeded the amount retained by the village. On or about June 23, 1972, upon notice of these payments and after being informed that the bonding company was relying on its assignment by Roe-Del in connection with the bond, Poultney paid to it the sums remaining in the retainage account.

The bank claims that this payment was wrongful and that its assignment entitles it to the monies paid to Maine Bonding by the Village of Poultney. It argues that its right to receive money was fixed at the time of assignment and the surety had no grounds for complaint because the contractor still gave every indication of going forward with the work, and adds that a later default could not undo this assignment. Where the assignment is made prior to default, it argues, the surety remains a disinterested party so long as the funds advanced to the creditor are used primarily to complete the contract work.

■ It should be noted that Roe-Del gave Maine Bonding its assignment on April 13, 1970. This assignment assigned all payments due or to become due under the Poultney-Roe-Del contract in the event Roe-Del failed to fulfill any obligations assumed under that contract. Not until June 3, 1971, did the bank, as security for the payment of Roe-Del's past, present, and future indebtedness to the bank, take its assignment of monies due or to become due under the same contract. Furthermore, although plaintiff asserts in its brief that its security interest in the contract funds was perfected by the filing of a financing statement, no evidence to this effect was

admitted at the trial level. A review of the transcript reflects that no testimony was even offered on the point, and no financing statement was made an exhibit. In short, the perfection of the bank's security interest is not evident from the record before us. And where no testimony is given in the trial court to support one's assertions of fact contained in his appeal brief, and where such facts do not appear in the trial record, they will not be considered on appeal. *Morse* v. *Morse*, 126 Vt. 290, 229 A.2d 228 (1967). Consequently, the bank's assignment shall be treated as an unperfected security interest.

The conflicting assignments herein involved are equitable in nature. The rule, quoted with approval in *Preston* v. *Russell, Follensby & Co.*, 71 Vt. 151 at 157, 44 A. 115 at 117 (1899) is as follows:

> It is settled that an assignment, for a valuable consideration, of a sum of money due or to grow due on the performance of an existing contract, will, on notice thereof being given to the debtor, operate at once, or when the fund is created, as an equitable assignment of so much of the fund as is covered thereby, subject to all valid prior charges.

Thus, at the moment of the assignment from Roe-Del to Maine Bonding, the equitable rights of the bonding company vested.

The Village of Poultney received notice of this assignment on April 13, 1970. This notice preceded any notice given to Poultney by the bank regarding its assignment and placed upon Poultney an obligation to hold the funds in question, subject only to existing equities and valid prior charges. See *Preston* v. *Russell, Follensby & Co., supra.* It is true that the trial court failed to make an express finding of actual or constructive notice to Poultney of the assignment to Maine Bonding, but this alone does not serve to invalidate the trial court's decision. Evidence was before the court that the contract was not signed until one, authorized to act in Poultney's behalf, had read both the application for the bonds and the bonds themselves and was aware of their language. We must pre-

sume that the court had these facts in mind when its decision was made. See *Segalla* v. *Segalla*, 129 Vt. 517, 283 A.2d 237 (1971). Since the assignment from Roe-Del to Maine Bonding was valid and since notice of it was given to Poultney prior to any notice of the bank's assignment, we hold that Maine Bonding's assignment is entitled to priority.

█ The bank also claims that its assignment is entitled to priority because Maine Bonding, having knowledge, failed to object and because the bank relied to its detriment upon the representations of the village. The complaint, however, does not plead estoppel. Indeed, a motion to amend its complaint was filed by the bank. The motion sought to add paragraphs alleging estoppel by the defendant's acquiescence and breach of Poultney's obligation to the bank. It was denied, and the trial court directed that the matter proceed to trial on the original complaint. Also, the court expressed doubt that the complaint alleged fraud with the specificity required under V.R.C.P. 9(b), and suggested to the bank that the case proceed solely on a breach of contract claim. The bank's counsel agreed to this suggestion. Thus, the case was tried only on the theory of implied contract. Alternative theories will not be considered now. See *Cote* v. *Boise, Jr.*, 111 Vt. 343, 16 A.2d 175 (1940).

Finally, it is argued that where a bank advances money to enable a party to a contract to perform to the extent that he did, the bank should be accorded priority rights and subrogated to any security held by the debtor.

The bank asks that we follow the rationale from the first and second cases of *River Junction* v. *Maryland Cas. Co.*, 133 F.2d 57 (5th Cir. 1943), and 110 F.2d 278 (5th Cir. 1940), *cert. denied*, 310 U.S. 634 (1940), as authorities for the proposition that where public authorities are notified of an assignment prior to default and acquiesce in it, and neither they nor the assignee-bank know the specific terms of the contractor's agreement with the surety entitling the surety to all monies due or to become due under the contract following default, the assignment is valid and receives priority over the surety. The bank concedes, however, that this is a minority view.

█ The majority holds that a stipulation for the retention of a certain percentage of the consideration for the pro-

tection of materialmen, laborers or the contractee is in part an indemnity for a surety who guarantees the performance of the contract by the contractor, and that it raises an equity in his favor in the fund thus created, or to be created, to the extent he suffers loss, which takes precedence over assignments of the fund by the contractor. See Annot., 76 A.L.R. 917 (1932). This result has been reached although the money from the assignee was expended in performing the contract, a fact which was not found here. *Maryland Casualty Co.* v. *Cincinnati*, 291 F. 825 (S.D. Ohio 1923). In effect, a surety who is required to pay material suppliers or laborers under its contract of suretyship upon the default of a principal, or in order to prevent such a default, acquires an equitable lien to the extent of its payments. This lien may be applied against any sum remaining in the hands of the party for whose protection the contract or bond was given, and is superior to any equitable lien arising thereafter. See *Pearlman* v. *Reliance Ins. Co.*, 371 U.S. 132 (1962).

Here Maine Bonding's subrogation rights became enforceable at the moment it was required to pay, and did pay, for charges incurred by Roe-Del for labor and materials supplied in connection with its contract. These rights relate back to the time when it entered into its contract of suretyship. *American Fidelity Co.* v. *Delaney*, 114 F.Supp. 702 (D. Vt. 1953); *Prairie State Nat'l. Bank* v. *United States*, 164 U.S. 227 (1896); *Canter* v. *Schlager*, 358 Mass. 789, 267 N.E.2d 492 (1971). Although the bank cites *North Pacific Bank* v. *Pierce County*, 24 Wash.2d 843, 167 P.2d 454 (1946) and *Coon River Co-op. Sand Ass'n.* v. *McDougall Const. Co.*, 215 Iowa 861, 244 N.W. 847 (1932) as support for the claim that Maine Bonding's subrogation rights do not relate back to the date of execution of the contract but arise only at the time of default, we do not agree.

Both of these cases were considered in *Hartford Accident & Indemnity Co.* v. *Long*, 245 A.2d 800 (Del. Ch. 1968). That court, however, followed the general principle of equitable subrogation favoring the surety, stating that in so doing, it represents the current law. See also *Gray* v. *Travelers Indem. Co.*, 280 F.2d 549 (9th Cir. 1960).

Although the bank asserts that the majority cases cited in the defendant's brief must be distinguished because all involve a federal statute such as the Miller Act, 40 U.S.C. 270a–270d or deal with a state statute which requires the public body to be furnished with a labor and material bond prior to its entering into a public contract, it does not do so persuasively.

*Framingham Trust Co.* v. *Gould-National Batteries, Inc.*, 427 F.2d 856 (1st Cir. 1970) involved an action against an owner by the contractor's surety and a secured creditor. There was neither the Miller Act nor such a state statute involved, yet the court held that the surety was entitled to full reimbursement by the owner for monies spent to complete building after the contractor's default and paid to unpaid laborers and materialmen. Its reimbursement was to come out of the unpaid balance owing for the completed work and was to be paid to the surety before any payments to the bank. The Court explained:

> [S]ince both the government and the non-government owner have the right to pay their suppliers out of the unpaid balance, the performing surety, through subrogation, is entitled to assert that right, and prevail over the secured creditor.

*Id.*, at 858–59.

The majority of cases on the issue have supported the surety's recovery with good reason. Premiums received by the sureties are not alone sufficient to make their business profitable. As was stated in *National Shawmut Bank* v. *New Amsterdam Cas. Co.*, 411 F.2d 843 (1st Cir. 1969), at 845, "the 'security' for the surety is not the fee but a compound of its confidence in the contractor and the opportunity to prevent or minimize its ultimate loss by its right to salvage the debacle by its own performance."

Accordingly, courts have subrogated the surety to the rights of the defaulting contractor, to the rights of materialmen and laborers, and to the rights of the owner himself. *Canter* v. *Schlager, supra.* They hold that since the surety's claim is not based on a security interest, Article Nine of the Uniform Commercial Code does not apply. See *National*

*Shawmut Bank* v. *New Amsterdam Cas. Co., supra.* Article Nine applies only to consensual security interests. 9A V.S.A. § 9–102. And the surety's interest is not consensual, but derives itself from the status inhering in a surety.

Furthermore, when the Uniform Commercial Code, adopted in Title 9A of the Vermont Statutes Annotated, was originally drafted, it contained a section designed to subordinate a surety's security interest to a subsequent lender's security interest. The Association of Casualty and Surety Companies opposed the proposed change and argued, successfully, that it be deleted. Thus, conflicts between the rights of sureties and third parties must be resolved without reference to Article Nine.

Although the bank argues that such a decision sanctions secret liens of sureties, we note that third parties who extend credit or lend to contractors are usually aware of the surety's presence behind the contractor. We agree with the court's statement in *Canter* v. *Schlager, supra,* 267 N.E.2d at 496:

> It is possible for parties dealing with a construction contractor to be ignorant of the existence of a surety bond. But it could well be a rational legislative judgment that the practice of furnishing performance and payment bonds in connection with construction contracts is so common and so well known that a requirement of public filing is unnecessary. (Citations omitted.)

The plaintiff's argument about "secret liens" would have no application to this case, in any event, because the contract involved was a public document, which the bank could have inspected in full if it so desired.

Finally, as to the bank's claim that there was an implied contract between itself and the Village of Poultney, we disagree. This claim is not supported by the findings of fact. On the contrary, the trial court found that Poultney made no promise to the bank, either express or implied, to pay any of the retainage money to the bank in the event Roe-Del defaulted on its note. It is well established that the reviewing court is bound to construe findings of fact reasonably, and they are to be so read as to support the judgment if they

reasonably may be. *Hilliker* v. *Husband,* 132 Vt. 566, 326 A.2d 177 (1974).

*The judgment in favor of both defendants is affirmed.*