## Northwest Vermont Solid Waste Management District v. Central Vermont Solid Waste Management District

[614 A.2d 816]

No. 91-619

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 31, 1992

*Steven F. Stitzel* of *Stitzel & Page, P.C.*, Burlington, for Plaintiff-Appellant.

*J. Paul Giuliani* of *McKee, Giuliani & Cleveland, P.C.*, Montpelier, for Defendant-Appellee Central Vermont Solid Waste Management District.

*Jeffrey L. Amestoy*, Attorney General, and *Conrad W. Smith*, Assistant Attorney General, Montpelier, for Defendant-Appellee State.

**Allen, C.J.** Northwest Solid Waste Management District, which disposes of solid waste at landfills in central Vermont, appeals from a superior court order upholding a charge on that disposal imposed by Central Vermont Solid Waste Management District. We affirm.

Both Northwest and Central Vermont are union municipal solid waste management districts chartered by the Vermont Legislature. Northwest disposes nearly all of the waste generated in its district at two privately owned landfills located within the Central Vermont district. The charge at issue, provided for in an ordinance promulgated by Central Vermont, imposes a $4-per-ton fee on all solid waste deposited at landfills in the district. It is collected by the landfills, paid into Central Vermont's general fund and, together with revenue from annual assessments to member municipalities, used by Central Vermont to carry out its planning and management functions. Northwest challenged the charge in superior court, seeking injunctive relief and a declaratory ruling that the charge was unlawful. The court concluded that the charge was a properly authorized fee for which Northwest received services and entered summary judgment for Central Vermont.

On appeal, Northwest argues that Central Vermont lacks a grant of authority, in either its charter or related statutes, to impose a charge for services that it does not directly provide. It further argues that the charge is an impermissible tax, rather than a fee, because the revenues collected are not used to provide services to those who pay it, and that the Legislature did not convey to Central Vermont the authority to impose such a tax. Finally, Northwest argues that the trial court erred by going outside the parties' stipulation of facts when it concluded that the charge was a fee, rather than a tax, for which Northwest "certainly receives benefits, although perhaps indirect, in terms of planning and other services of Central Vermont." We are persuaded that Central Vermont has the authority to impose the disputed charge, whether it is deemed a fee or a tax, and that Northwest receives benefits from Central Vermont in return for the charge.

In 1987, the Legislature reinforced the state's comprehensive scheme for the management of solid waste by requiring the involvement of each municipality through participation in regional districts. 1987, No. 78, § 3; 24 V.S.A. § 2202a(c). Furthermore, Act 78 declares as the state's policy that "[t]he generators of waste should pay disposal costs that reflect the real costs to society of waste management and disposal." 10 V.S.A. § 6601(3). Each municipality has responsibility for participating in a regional district, 24 V.S.A. § 2202a(c)(1), and each region is required to develop a plan to meet the priorities established by 10 V.S.A. § 6604(a)(1). 24 V.S.A. § 2202a(c)(2). Section 6604(a)(1) establishes the following priorities in descending order: reduction in the amount of waste generated, reuse and recycling, waste processing to reduce volume, and, last, disposal of residuals. The real cost to society of waste management and disposal thus includes the costs for implementing each of these priorities, which combine "to reduce the amount of waste generated and to promote environmentally acceptable and economical means of waste management." 10 V.S.A. § 6601(2).

Central Vermont's charter grants the district broad powers that enable it to fulfill its statutorily mandated responsibilities. 1987, No. M-8. The ordinance at issue relies on sections 5(a), (h), and (u) of Article I of the charter for authority to impose the disputed charge. Northwest argues that section 5(a), which

allows Central Vermont "to operate, cause to be operated, and/ or contract for the operation of any and all facilities for the collection, transportation, resource recovery, recycling and disposal of solid waste, and to determine and make proper charges for such services," should be construed to prohibit charges for any service not directly provided by Central Vermont. The trial court held otherwise, but we need not address this provision, or others expressly relied upon in the ordinance, because we conclude that a different section of Central Vermont's charter provides adequate authority for the disputed charge.

■ In Article IV, section 8 of the charter, the Legislature explicitly granted to Central Vermont the authority to set fees for solid waste disposal within its district. Section 8 provides that the district's "Board of Supervisors may from time to time establish and adjust a disposal fee structure (tipping fee) for the purpose of generating revenues from sources other than assessments to member municipalities, particularly concerning the operation and maintenance of any District solid waste and/ or resource recovery facility." This grant of authority is clear, and we do not read the word "particularly" as limiting Central Vermont to make charges at landfills that it may operate. We give the word its plain and commonly accepted meaning, *Central Vermont Ry. v. Department of Taxes*, 144 Vt. 601, 604, 480 A.2d 419, 421 (1984), which is to emphasize, not limit, the district's authority. Moreover, we consider the charter provision in concert with the aforementioned provisions of Act 78. See *Wolfe v. Yudichak*, 153 Vt. 235, 240, 571 A.2d 592, 595 (1989) (statute must be read in context of entire scheme). Given the prominent role of the regional districts in the overall solid waste management scheme, see 24 V.S.A. § 2202a(c), broad authority in those districts over disposal, including the authority to set and collect related charges, is required to effectuate the purposes of the Act. The authority to impose charges on the disposal of solid waste is necessary to ensure that the generators of such waste pay the real cost of its management. See *In re A.C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984) (stating preference for construing statute to accomplish purpose for which it was intended).

■■ Northwest acknowledges the existence of Article IV, section 8, but contends that the $4-per-ton charge is an un-

authorized tax or, alternatively, that it is a fee for which Northwest receives no services. We disagree with both contentions. First, as we have concluded, the Legislature authorized Central Vermont to impose the charge. The Legislature is free to delegate its taxing power to municipalities "in such measure as it pleases." *Welch v. Town of Ludlow*, 136 Vt. 83, 87, 385 A.2d 1105, 1108 (1978). Here, it expressly provided that the district could establish tipping fees for the purpose of generating revenues. Given this express grant to raise revenues, the charge is permissible as a tax.

■ Second, although we agree with Northwest that the word "fee" connotes a charge for a direct service to a particular consumer, see *Brewster v. City of Pocatello*, 115 Idaho 502, 505, 768 P.2d 765, 768 (1988), we also agree with the trial court that solid waste generators within the Northwest district receive services from Central Vermont. Central Vermont is required to develop a regional plan to address the full array of services necessary for solid waste management. All solid waste disposal facilities within the district must be included in that plan as a prerequisite to certification and operation. 10 V.S.A. § 6605(c). Central Vermont's preparation and adoption of its regional plan therefore provides a service to all generators who dispose of waste in its district by making disposal and other waste management facilities available for their use. This service is what Act 78 requires, and the instant charge furthers the purposes of the Act. Cf. *Champlain Valley Exposition, Inc. v. Village of Essex Jct.*, 131 Vt. 449, 453, 309 A.2d 25, 28 (1973) (tax that fails to meet the purpose of its enabling act is invalid). Northwest avails itself of Central Vermont's waste management services, and the court did not err in concluding that Northwest receives a benefit from Central Vermont in return for the $4-per-ton charge, notwithstanding the parties' lack of stipulation regarding a benefit.

■ Finally, Northwest's contention that the fee is excessive deserves little attention. That claim was not raised by the complaint, and we will not consider it here for the first time. See *First Vermont Bank & Trust Co. v. Village of Poultney*, 134 Vt. 28, 32, 349 A.2d 722, 726 (1975) (theory of estoppel, not pled in complaint, will not be considered on appeal).

*Affirmed.*